## 68326. KERVIN v. THE STATE.
### (323 SE2d 643)

Carley, Judge.

Appellant appeals from his conviction of possession of obscene material with the intent to disseminate same, in violation of OCGA § 16-12-80.

1. Appellant enumerates as error the general grounds. The evidence adduced at trial showed the following: An undercover officer went to a certain adult bookstore and purchased a copy of a magazine identified as "Sex Sisters, Vol. 3/No. 2." The officer took the magazine to a judge, who made an initial determination of probable obscenity and issued a "John Doe" arrest warrant for the vendor of the magazine. The officer returned to the bookstore and executed the warrant by arresting the employee who had sold him the magazine. The officer and his partner then asked the employee whether there was anyone who could lock up the store, or whether he could call anyone to do so, since the employee would be taken to jail. At that point, appellant informed the officers that he would "take over." The officers asked appellant whether he worked at the bookstore, and he replied that he did. These statements gave the officers probable cause to believe that appellant intended to disseminate the items offered for sale in the store. *State v. Handspike*, 240 Ga. 176 (240 SE2d 1) (1977); *King v. State*, 161 Ga. App. 382 (288 SE2d 644) (1982). Appellant was then placed under arrest, and one of the officers removed from a display rack another copy of "Sex Sisters, Vol. 3/No. 2." This second copy of the magazine formed the basis of the charge against appellant.

In addition to the evidence that appellant offered to "take over" the bookstore, there was also evidence that appellant was employed by the store in a supervisory capacity. A former clerk testified that appellant had instructed him to work in the store, and that appellant would unlock the front door of the store, open the safe, and supply the clerk with cash at the beginning of his shift. The clerk considered appellant to be his boss.

The foregoing evidence was sufficient to establish that appellant was an employee of the adult bookstore, and that he possessed a copy

of "Sex Sisters, Vol. 3/No. 2" with the intent to disseminate it. From the evidence presented, any rational trior of fact could have determined beyond a reasonable doubt that appellant was guilty of the offense charged. See *Spry v. State*, 156 Ga. App. 74 (274 SE2d 2) (1980); *Allen v. State*, 144 Ga. App. 233 (240 SE2d 754) (1977), cert. denied 439 U. S. 899 (1978).

2. At the close of the State's evidence, appellant moved for a directed verdict of acquittal on the ground that the State had failed to produce sufficient evidence of the commercial exploitation of erotica. The denial of this motion is enumerated as error.

There was testimony that the outside of the store bore signs clearly identifying it as an adult bookstore which showed movies. An admission fee was charged for the pornographic section of the store wherein hundreds of sexually explicit magazines were displayed in open racks and offered for sale. This evidence was sufficient to enable a rational trior of fact to find beyond a reasonable doubt that there was commercial exploitation of erotica in the instant case. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The motion for directed verdict was properly denied. *Maddox v. State*, 170 Ga. App. 498 (317 SE2d 617) (1984).

3. Appellant also enumerates as error the failure of the trial court to instruct the jury as to the definition of "possession." No request for such a charge was made.

"This court has held that ' "possession" . . . is a word well known and familiar to all laymen, and is in general use by them; they understand its meaning. It is so obvious [that] we cannot imagine the jury having any difficulty in applying it, or in having any doubt as to its meaning.' [Cit.] 'In the absence of request, the court's failure to define the meaning of terms used in the charge is not ordinarily ground for reversal.' [Cit.]" *Shumake v. State*, 159 Ga. App. 141, 143 (282 SE2d 756) (1981).

4. The remaining enumeration of error concerns the denial of appellant's motion to suppress the physical evidence of the magazine.

As noted in Division 1, supra, the second copy of "Sex Sisters, Vol. 3/No. 2" was seized without a warrant. Appellant contends that this seizure was in violation of the protection afforded written publications by the First Amendment. "Roaden [v. Kentucky, 413 U. S. 496 (93 SC 2796, 37 LE2d 757) (1973)] clearly holds that a police officer may not arrest [or seize] without a warrant on a charge of possessing or [disseminating] pornographic material in a place of public accommodation . . . under circumstances where he substitutes his judgment as to the obscenity of the material for that of a neutral and detached magistrate. . . . The clear purport of this decision is that the sometimes sophisticated value judgments necessary to establish guilt or innocence under obscenity laws must, to preserve First

Amendment rights, be passed upon by a judicial officer rather than a member of the police department. [Cits.]" *Hall v. State*, 139 Ga. App. 488, 489 (229 SE2d 12) (1976). See also *State v. Smalley*, 138 Ga. App. 747 (227 SE2d 488) (1976). "The Constitution at a minimum apparently requires the imposition of a neutral, detached magistrate in the procedure to make an independent judicial determination of probable cause prior to issuing an arrest warrant or some other warrant authorizing the seizure of allegedly obscene material to be used as evidence. [Cit.]" Penthouse Intl., Ltd. v. McAuliffe, 610 F2d 1353, 1362 (1980), cert. dismissed 447 U. S. 931 (1980). Once such a judicial determination has been made, the material is no longer presumptively protected by the First Amendment, and it is subject to seizure under the rules applicable to seizures of other types of contraband.

The instant case does not present an instance of constitutionally forbidden prior restraint, because there had been a previous judicial determination of probable obscenity with regard to another copy of the same magazine which was seized in conjunction with appellant's arrest. Although the officer did not inspect each page of the second copy of "Sex Sisters" to ascertain that it was precisely the same as each page of the first copy, he did examine the front cover of the second magazine to determine that it was the same as the one which had previously been judicially scrutinized. Since the covers of the two publications were identical, and both were copies of "Sex Sisters, Vol. 3/No. 2," a reasonable person would have probable cause to believe that the second copy was the same as the first, and that it had already been the subject of an initial adjudication of probable obscenity. Thus, unlike the situations in *Hall* and *Smalley*, supra, the officer in the case at bar did not substitute his assessment of obscenity for that of a neutral and detached magistrate.

Under these particular factual circumstances, where police officers went to a bookstore and purchased a magazine, presented the magazine to a neutral and detached magistrate who determined that it was probably obscene, then returned to the same store on the same day and seized another copy of the same magazine, we hold that the warrantless seizure did not violate appellant's constitutional rights. There was probable cause to arrest appellant for displaying a copy of the same magazine which had served as the basis for an arrest warrant for distributing obscene materials. The second copy of "Sex Sisters, Vol. 3/No. 2" was legally confiscated as evidence of a violation of law committed in the presence of the officer. The seizure was properly incident to the lawful arrest of appellant, and it was not error to deny the motion to suppress.

*Judgment affirmed. McMurray, C. J., Banke, P. J., Birdsong, Sognier and Benham, JJ., concur. Deen, P. J., concurs specially. Quillian, P. J., and Pope, J., dissent.*

DECIDED SEPTEMBER 27, 1984 —
REHEARING DENIED OCTOBER 30, 1984 

*R. David Botts*, for appellant.

*James L. Webb, Solicitor, Charles S. Hunter, Assistant Solicitor*, for appellee.

DEEN, Presiding Judge, concurring specially.

While concurring in the judgment of the majority opinion, three points should be made.

1. The dissenting opinion of Presiding Judge Quillian is a scholarly summary of the law in the area of the First, Fourth, and Fourteenth Amendments of the United States Constitution. I question the applicability of Roaden v. Kentucky, 413 U. S. 496 (93 SC 2796, 37 LE2d 757) (1973), however, as in that case the sheriff viewed the film, whereas in the instant case a neutral judge made the initial determination of probable obscenity. The officer was at a place where he had a right to be when he saw another copy of the same magazine which had initially been adjudicated obscene. He arrested the appellant, as he probably could have arrested any other employee in the store who had custody and possession of this particular magazine for sale. Compare recent trends of the United States Supreme Court in related areas liberalizing good faith judgments of officers involving technical errors of different kinds. United States v. Leon, 468 U. S. __ (104 SC 3405, 82 LE2d 677) (1984); Massachusetts v. Sheppard, 468 U. S. __ (104 SC 3424, 82 LE2d 737) (1984); Segura v. United States, 468 U. S. __ (104 SC 3380, 82 LE2d 599) (1984).

2. The recent whole court case of *Maddox v. State*, 170 Ga. App. 498 (317 SE2d 617) (1984) cited *Lee v. State*, 247 Ga. 411, 412 (6) (276 SE2d 590) (1981) as to the requirements when considering motions for directed verdicts of acquittal. The following standard was set forth: "[T]here was ample evidence sufficient to enable any rational trier of facts to find the existence of the offenses charged beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560)." *Maddox*, supra at 499. A special concurrence written by the author of the majority opinion in the instant case agreed with this same test but suggested further: "I would overrule all cases, including but not limited to those cited above, which employ the 'any evidence' test in the review of the denial of a motion for a directed verdict of acquittal." Id. at 504.

To the extent that the two post-*Maddox* cases, *Weaver v. State*, 170 Ga. App. 731, 732 (4) (318 SE2d 196) (1984), and *Minter v. State*, 170 Ga. App. 801 (1) (318 SE2d 226) (1984), do not comply with the *Maddox* rule, they should be overruled. *Weaver* uses the word "suffi-

cient" rather than "any evidence" but does not use the rational trier of fact standard. *Minter* does not use the word "sufficient," "any evidence" or rational trier of fact standard.

3. The majority opinion addresses the possession feature of the alleged obscene materials but does not consider obscenity vel non. The trial judge admitted the magazine in evidence (Exhibit S-2) and charged the jury that they were to determine whether or not it was obscene. The preliminary initial determination of probable obscenity does not eliminate the subsequent duty of the jury, when this issue is contested, to resolve the obscenity question. This court is thus required to make an independent determination on this issue. "In accordance with *Dyke v. State*, 232 Ga. 817, 821 (209 SE2d 166) (1974), we have made an independent appellate review of the material to decide the constitutional fact of obscenity. The magazines come within the definition of Code Ann. § 26-2101." *Flynt v. State*, 153 Ga. App. 232, 245 (264 SE2d 669) (1980). The magazine contains approximately 100 photographs of women engaged in various types of sexual activity. While the magazine indicates that the participants are models over 18 years of age, and while it further appears that their acts were those of paid but consenting adults, the jury nevertheless could have found or inferred that these photographs depict a type of vicarious mental sexual abuse or show a syndrome of battering or disparagement of all women,[1] and "published for the purpose of appealing to prurient interest in perversion and degeneracy, and an affront to the contemporary community standards of any community anywhere." *Feldschneider v. State*, 127 Ga. App. 745, 746 (195 SE2d 184) (1972). Likewise, as charged by the court, the jury may have considered the magazine as lacking literary, artistic, political or scientific value, or, if containing any value in these areas then not of a serious nature.

I would affirm.

QUILLIAN, Presiding Judge, dissenting.

I respectfully dissent from the majority opinion. The question presented by this appeal is whether the defendant was denied due process under the Fourth and Fourteenth Amendments of the U. S. Constitution by the procedure followed by the arresting officers.

I find the magazine seized patently obscene. The procedure followed in the arrest of Royal was correct and in conformity with Marcus v. Search Warrant, 367 U. S. 717 (81 SC 1708, 6 LE2d 1127). A prior judicial determination was made as to the obscenity vel non of the magazine purchased from Royal. Also, it was clear that there was

---

[1] Testimony was given before the "Senate Subcommittee on Juvenile Justice studying sexual exploitation of women and children." See "Ex-porn Star Testifies Sex Films Hurt Women," *The Atlanta Journal*, Thursday, September 13, 1984.

probable cause to arrest Royal as he was the one who sold the magazine to the officer. Following the arrest of Royal he was asked "if he had someone he could call to lock up the store because we were taking him to — him to the county jail. Heard a voice behind me say ['] that's okay, I'll take over now['] . . . Q. When I turned around and asked him — We couldn't leave the store with just anybody — did he work there or own it or work there, he says, [']Yes, I do.['] I said okay, fine, I'm arresting you for distributing obscene material." Following this conversation one officer went to the magazine rack in the enclosed section and picked up another copy of the "Sex Sisters." At the time the warrantless arrest was made the officers had no knowledge of Kervin's prior presence in the bookstore — either at the time of the prior purchase or at the time of Royal's arrest. What is interesting is that after Kervin was arrested they asked him if he could lock up the store and he could only lock the inside lock. The attorney for the bookstore came to the premises and the officers "put the store in his custody." This same set of circumstances had caused the arrest of Kervin only moments before. Presumably, the officers had as much reason for the warrantless arrest of the attorney as anyone who was in charge or custody of the bookstore which possessed a copy of a magazine which had previously been determined to be obscene.

The States have a legitimate interest in regulating commerce in obscene material. Paris Adult Theatre I v. Slaton, 413 U. S. 49, 69 (93 SC 2628, 37 LE2d 446). However, the States are not unrestricted in adopting whatever procedure it pleases for dealing with obscenity, and " '[t]he existence of the State's power to prevent the distribution of obscene matter does not mean that there can be no constitutional barrier to any form of practical exercise of that power.' " Marcus v. Search Warrant, 367 U. S. 717, 730, supra. Even a warrant for the seizure of allegedly obscene material cannot be based on the conclusory opinion of a police officer at the scene of the arrest. Id. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." General exploratory warrants are forbidden. Andresen v. Maryland, 427 U. S. 463 (96 SC 2737, 49 LE2d 627). Neither does the Fourth Amendment countenance open-ended warrants to be completed when the search or arrest is being conducted. Lo-Ji Sales, Inc. v. New York, 442 U. S. 319 (99 SC 2319, 60 LE2d 920).

The Fourth Amendment right of specificity and particularity in describing the person, place, and things to be seized bears a special relation to First Amendment rights in literature (Roaden v. Kentucky, 413 U. S. 496, 501 (93 SC 2796, 37 LE2d 757)), for the contents of a bookstore are presumptively under the protection of the First Amendment. Id. at 504. "In short . . . the constitutional re-

quirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis for their seizure is the ideas which they contain." Stanford v. Texas, 379 U. S. 476, 485 (85 SC 506, 13 LE2d 431). " 'Any system of prior restraints of expression comes to the [the U. S. Supreme] Court bearing a heavy presumption against its constitutional validity.' " Heller v. New York, 413 U. S. 483, 491 (93 SC 2789, 37 LE2d 745). Our own Supreme Court follows this rule that " ' "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." The exceptions are "jealously and carefully drawn," and there must be "a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative." "[T]he burden is on those seeking the exemption to show the need for it." ' " *State v. Slaughter*, 252 Ga. 435, 436 (315 SE2d 865).

In the instant case, the officers have shown no exigency, and could have repeated the same procedure followed earlier with Royal. Although the officers lawfully could have seized all copies of the offensive publication, defendant Kervin's name was not included in the warrant and the officers had no prior knowledge of his participation in the "distribution of obscene material." The U. S. Supreme Court found that "[s]uch precipitate action by a police officer, without the authority of a constitutionally sufficient warrant, is plainly a form of prior restraint, and is, in those circumstances, unreasonable under Fourth Amendment standards." Roaden v. Kentucky, 413 U. S. 496, 504, supra. The procedure of a warrantless arrest, even where the material seized has been determined by a magistrate to be obscene, but without a determination by the magistrate of the issue of probable cause to arrest the person, is an illegal telescoping of the processes for lawful issuance for a warrant required in confiscation of obscene material. See Lo-Ji Sales, Inc. v. New York, 442 U. S. 319, 328, supra. In the absence of "exigent circumstances in which police action literally must be 'now or never' to preserve evidence of the crime," it is not reasonable to permit police seizure of obscene material and arrest of the proprietor, without prior judicial evaluation. Roaden v. Kentucky, 413 U. S. 496, 505, supra.

If this Court were to sanction the procedure authorized by the majority, it would be permissible to obtain the determination of one magistrate, who might be known to be strict on obscene material, that one issue of a popular magazine such as Playboy or Penthouse is obscene, and then *without a warrant* arrest every owner, operator, and worker in every bookstore, drug store, and grocery store that sold that issue of that magazine. Due process, under the Fourth and Four-

teenth Amendments, requires a process that encompasses prior scrutiny by a judge or magistrate of the material considered to be obscene, and evidence as to identification of the person and place. Cf. Marcus v. Search Warrant, 367 U. S. 717, 731, supra. I would find the arrest of the defendant to be illegal under the circumstances of this case.

I am authorized to state that Judge Pope joins in this dissent.