71943, 71944. KERVIN v. THE STATE (two cases).
71945. SMITH v. THE STATE.
(344 SE2d 441)

BIRDSONG, Presiding Judge.

Rodney Glenn Smith, Donald Lee Kervin, Ronald Len Kervin and Jerry Bergen were separately accused and jointly tried for six counts of distribution of pornographic material, convicted and sentenced in accordance therewith. The facts before the jury reflected that Rodney Smith was the principal owner of several adult book stores; that Jerry Bergen was also an owner in an undescribed capacity and that Donald and Ronald Kervin (twins) were also part owners of the business holding themselves out as officers in the business. Over a several month period, officers of the Fulton County vice squad purchased several magazines depicting simulated sexual acts of female fondling female and cunnilingus and depicting unnatural devices for penetration of the female sexual organ. A film depicted male and female hard core pornography. Each of the four owners was charged with aiding and abetting in the possession and distribution of pornographic material.

Prior to trial, the firm of Theodore Worozbyt and William Morrison apparently represented the defendants and especially Ronald Kervin. Worozbyt and Morrison filed numerous motions on behalf of the defendants including motions in abatement, general demurrers to the accusations, motions to suppress because of the absence of exigent

circumstances, motion in limine, motions for severance of charges and defendants, motion for production of exculpatory documents, motion for bill of particulars, motion for consolidation of all counts into one count, motion to dismiss for deficiencies in the accusations, and an extensive *Brady* motion. Apparently these were all satisfied for complete discovery was granted by the state and further reference of any failure to grant any particular pretrial motion is not mentioned in this appeal.

When trial commenced, each of the defendants was represented by Franklin N. Biggins. No mention of attorney Biggins in any pretrial activity appeared in the record nor does the record reflect withdrawal by the firm of Worozbyt & Morrison. Each of the four defendants was present on the first day of trial and for all the record reflects, concurred fully in the representation and tactics of attorney Biggins throughout the trial. The record reflects that Biggins conducted a voir dire examination of each potential juror seeking to impress upon each that even if the material presented during a trial might be offensive personally to a juror, the juror was required to find that the material was offensive to the community generally and a personal feeling of moral offensiveness was not necessarily controlling. Biggins moved for a mistrial based upon the possibility that prospective jurors might have overheard a conversation that one of the defendants was wanted in another jurisdiction for a similar crime.

Biggins made a cogent and appropriate opening statement. During that statement, apparently to minimize the vulgarity of the exhibits, he advised the jurors that he had not felt it necessary to look at the magazines the state was going to be offering nor the film and probably the jurors might be offended personally by the contents of the evidence. Nevertheless, the jurors were in effect reminded of their voir dire comments that every person had the right to purchase and examine the type of documents and books that appealed to him or her individually (i.e., as several jurors observed, "to each his own") and personal offensiveness would not suffice unless the jury could determine that the books and film were offensive to the general public.

During the trial proper, Biggins made numerous objections to the offer of evidence and questions of the state. He conducted cross-examination of the several witnesses. In that cross-examination, his questions reflected some knowledge of the contents of the exhibits offered for he obtained admissions by the vice squad agents that the magazines did not depict any actual act of sexual conduct but only simulations thereof. He made a motion for a directed verdict and made an opening and closing argument. He objected to the failure of the trial court to give four of the eight charges requested by the defense. Biggins made a motion for mistrial based upon alleged improper argument by the state during its closing argument and follow-

ing the conviction he sought and obtained a poll of the jury. Finally, Biggins objected to evidence of prior convictions offered after the conviction and during the sentencing phase of the trial.

While all four defendants were present on the first day of trial, on the afternoon of the first day, the appellant Smith was overheard making a statement that he was going to have himself admitted to a hospital and would not be present at the proceedings the next day. The next morning, attorney Biggins announced to the trial court that he had just been informed by telephone (approximately 30-40 minutes before the proceedings resumed) that Smith had been admitted to a hospital. Biggins moved for a mistrial on behalf of Smith because of the unavoidable absence with a view toward a continuation and completion of the trial against the remaining three defendants. Upon objection by the state that the absence might well not be bona fide, the trial court asked for medical evidence that Smith's health and safety required his admission to a hospital and continued absence from the trial. Biggins admitted that he had not received sufficient timeliness of notice from Smith to obtain affidavits or evidence as to Smith's physical condition. The trial court, concluding there was insufficient basis for delay of the trial, ruled that Smith had voluntarily absented himself from trial and ordered the trial to proceed against all four defendants.

After the conviction of the four defendants, attorney Biggins filed a notice of appeal to this court. He then simply disappeared from the trial process and the firm of Worozbyt and Morrison made a renewed appearance representing Smith while a new attorney (Botts) appears on behalf of the Kervin twins.

The present attorneys each withdrew the notices of appeal filed by Biggins and substituted motions for new trial. After denial of those motions, each of the defendants (except Bergen) filed renewed notices of appeal. These appeals contend that the appellants were denied effective assistance of representation by Biggins. On behalf of Smith, it is enumerated as error that the trial court erroneously allowed the trial to proceed during the absence of Smith; that the material offered by the state was not pornographic as a matter of law; and that the trial defense counsel was "shockingly" deficient in his pretrial preparation by failing even to examine the alleged pornographic material to be offered against his clients. On behalf of the Kervin twins, error is enumerated that Biggins afforded these two appellants ineffective assistance because Biggins could not effectively represent four defendants without conflict of interest, filed no pretrial motions, did not even discuss the trial with Ronald Kervin, and admitted inadequate pretrial preparation by not examining the state's exhibits prior to trial. *Held*:

## *Case # 71945 (Smith)*

1. Addressing first the allegation that the exhibits offered by the state as the pornographic material in support of the charges were not, as a matter of law, pornographic in content, suffice it to say we have examined the exhibits and find no literary or artistically redeeming features in any of the exhibits. As a matter of law, we conclude each of the magazines and film satisfies the verdict of guilt found beyond a reasonable doubt by the jury. *Kervin v. State,* 172 Ga. App. 478 (1) (323 SE2d 643); see *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. Smith raises as error the refusal to grant a mistrial or delay the trial as to Smith because of his incapacity and hospitalization and continuing the trial to completion in his absence.

We recognize as one of the most fundamental, the right of a criminal defendant to be present at his own trial, confront the witnesses against him and present evidence in his own behalf. Nevertheless, we likewise recognize the dilemma posed to the trial court. This trial involved the joint trial of four defendants, not just the trial of Smith. The jury had been struck, evidence presented to the jury on the first day of trial and the jury and all witnesses plus the three remaining defendants were present on the second day of trial. Thus, it is clear that a mistrial as to Smith or a continuance of the proceedings would create a substantial hardship for many participants in the trial. Only in the face of persuasive evidence of inability of Smith to be present by factors beyond his control would the trial court have been justified in taking so drastic an action. Viewing the action of the trial court as of the time of the ruling and not as of the time of evidence presented on a motion for new trial, the evidence presented to the trial court by Biggins showed that Biggins apparently was unaware of Smith's announced intentions of the day before to have himself admitted to a hospital or his subsequent admission to a hospital until approximately 40 minutes before the trial recommenced on the second day of trial. The extent of his knowledge was a telephone call from Smith that he (Smith) would not be present because of admission to a hospital. Biggins candidly admitted that he could not verify the truth or falsity of that assertion but could only relay Smith's contention to the court. Thus no evidence from a doctor or a hospital was offered to support the contention. Additionally the state objected to any delay and offered its argument to the trial court that Smith had informed his two codefendants (if not his counsel) that he would not be present the next day for he would have himself admitted to a hospital, and perhaps the two codefendants would be better off in his absence. Thus Smith's asserted involuntary absence on the morning of the second day of trial was suspect at best.

Later when evidence was submitted by new counsel (Worozbyt and Morrison), medical evidence showed that Smith indeed was ill and needed to be admitted to the hospital. However, the medical testimony was such that the trial court could consider that though Smith was not dangerously ill and that his presence at a trial would not be life endangering, the court also reasonably could conclude that the condition experienced by Smith was likely to continue indefinitely and thus the same strain would exhibit itself and an indefinite absence could be required by Smith's condition. Under similar circumstances, it has been held that a trial court does not abuse its discretion in forcing a trial on to conclusion in the absence of a defendant. See *Dasher v. State,* 157 Ga. App. 664, 665 (278 SE2d 465). Thus whether we consider the absence of the defendant Smith as voluntary because of a woefully inadequate showing of absence caused by an illness beyond his control at the time of trial, or find upon a showing by medical evidence at a hearing of a motion for new trial that a later renewal of trial would be wholly indefinite, we cannot find the trial court abused its discretion in denying the mistrial, denying an implied motion for continuance or in denying the subsequent motion for new trial. There is no substantial merit in this enumeration of error.

3. Smith also raises as error the alleged inadequate representation by Biggins, an enumeration common to the sole enumeration of error raised by the Kervin twins in their appeals (Case Nos. 71943 and 71944). The Kervin twins base their contention of inadequate representation upon four bases: (1) that there was an inherent prejudice in attempting to represent four defendants who *might* have separate defenses; (2) that Biggins had never looked at the evidence to be offered by the state in support of the accusations of distributing pornography; (3) that Biggins never made or argued any pretrial motions; and (4) that Biggins had never spoken or counseled with Ronald Kervin at any time about the trial or the evidence. Smith bases his argument of inadequate representation exclusively upon Biggins' admitted failure to examine the state's documentary evidence prior to trial.

Each of these bases was asserted as a clear and even "appalling" lack of preparation for trial but ignores other reasonably apparent failures on the part of the appellants. It is equally inconceivable that four criminal defendants could be represented for a period of months by two counsel who vigorously pursued the defense of the accusations by filing many motions and successfully forcing disclosure by way of discovery and affecting the state's trial tactics, but then remain wholly silent when a total stranger appeared in the courtroom to act as their defense counsel for the first time on the day of trial. The silence and acquiescence of the four defendants is more consistent with a conclusion that they were aware of the coming appearance of

Biggins and fully consented to his appearance and tactics pursued in their representation. Simple logic and experience do not allow us to conclude that these defendants, who the record shows were not ignorant of criminal court appearances, could or did sit silently while a counsel pursued a defense about which they were totally ignorant or in disagreement. There is at least some duty placed upon a criminal defendant to make known his objections to representation if indeed there are such objections. None having been raised at trial, we will not now entertain such objections made for the first time on a motion for new trial or on appeal. See *Pulliam v. State*, 236 Ga. 460, 465 (224 SE2d 8); *Moore v. State*, 138 Ga. App. 902 (2) (227 SE2d 809).

Moreover, we can discern no harm to appellants because Biggins did not file any additional motions or argue pretrial motions. As hereinbefore stated, appellants' original counsel (Worozbyt and Morrison) filed in excess of ten pretrial motions. There is no showing what additional motions could have been filed or how an injustice occurred because such hypothetical motions were not filed. Assuming that Biggins could have filed additional pretrial motions, appellants have shown no harm to themselves by such failure. It is the well established rule in this state that harm as well as error must appear in order to warrant a new trial. *Dill v. State*, 222 Ga. 793 (1) (152 SE2d 741).

As to the contention of all three of the appellants that they were harmed by the failure of Biggins to examine the state's evidence prior to trial, we conclude appellants place more weight in that asserted failure than the transcript allows. As earlier indicated herein, it is apparent from the transcript that Biggins did have some familiarity with the evidence. In his cross-examination of the witnesses, he discussed the contents of the magazines and the film and obtained admissions from the state's witnesses that the material showed only simulated sexual activity. Moreover as the state argues in its rebuttal to the motion for new trial, the admission of Biggins in his opening statement and closing argument that he had not examined the material and that it might well personally be offensive to the jurors was wholly consistent with his entire trial approach and thus could reasonably be designed to downplay the significance of the offensiveness of the material individually to each juror. When we compare this apparent tactic against the vigorous defense afforded each defendant as reflected in the transcript and detailed in our statement of facts, we are hard pressed to reach a conclusion that Biggins afforded these appellants inadequate representation. The standard of effectiveness is not to be judged by hindsight nor by the result that the appellants were convicted. *Pitts v. Glass*, 231 Ga. 638 (203 SE2d 515). While another lawyer or lawyers, had they represented the appellants at trial, might have conducted the case in a different manner, and exer-

cised different judgments with respect to the matters referred to in their enumeration of error, the fact that the trial attorney chose to try the appellants' case in the manner in which it was tried and made decisions as to conduct of the defense with which the presently employed counsel now disagree, does not require a finding that the actual representation of appellants was so inadequate as to amount to a denial to them of the effective assistance of counsel. *Jones v. State*, 243 Ga. 820, 830 (12) (256 SE2d 907).

Because of the presumption that a lawyer is competent, the burden falls upon a defendant to demonstrate a constitutional deprivation of right to counsel. Such a constitutional deprivation is demonstrated where counsel is prevented from being present or prevented meaningfully from assisting the defendant during the trial. Neither of these situations occurred in this trial. Short of a constitutional deprivation, the appellants must show that the counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This showing requires that trial counsel was not functioning as a counsel as guaranteed by the Sixth Amendment and secondly that the deficient non-performance materially prejudiced the appellants. The object of an ineffectiveness claim of non-constitutional proportions is not to grade counsel's performance but to determine if there is an adequate showing of prejudice. As we have already observed, Biggins did function in an orderly and efficient manner. There is no evidence that the state or the court curtailed Biggins' activities on behalf of any of the appellants. Therefore appellants are required affirmatively to show prejudice resulting from counsel's conduct and meet the burden of showing that the decision reached would reasonably likely have been different absent the errors. Our close search of this record and transcript fails to disclose any prejudice to the appellants or that a different defense would have resulted in a different verdict. Whether or not Biggins had examined the material in the possession of the state is a fact which would not have kept the material from the presence of the jury nor lessened its impact. Moreover, the same defense was presented on behalf of all the appellants and each elected to remain silent. There is no indication that one of the appellants was sacrificed in person or in defense for the protection of any other appellant. In short, we find no sign of prejudice in the defense offered by Biggins nor presence of inconsistent defenses. Appellants have failed to present this court with any cogent or persuasive indicia of prejudice. Thus, we must conclude there is no merit in the assertion of inadequacy of representation. See generally in this regard the recent case of *Davenport v. State*, 172 Ga. App. 848 (325 SE2d 173).

*Judgments affirmed. Banke, C. J., and Sognier, J., concur.*

Decided March 20, 1986 —
Rehearing denied April 3, 1986 —

R. *David Botts*, for appellants (case nos. 71943, 71944).

*Theodore S. Worozbyt, Steven A. Westby*, for appellant (case no. 71945).

*James L. Webb, Solicitor, Lawrence L. Washburn III, Charles S. Hunter, Christina A. Craddock, Assistant Solicitors*, for appellee.