## 72978. HOOPER v. THE STATE.
(353 SE2d 843)

BEASLEY, Judge.

Defendant appeals his conviction of aggravated assault (OCGA § 16-5-21 (a) (2)) on two grounds: one, that the court's restrictions on the scope of cross-examination violated his federal constitutional and state statutory rights; two, that he was denied a fair trial in that he was denied the opportunity to rebut the victim's testimony because he was not given access to the victim's written statement and because he was restricted from eliciting details of the victim's acting as an informant for the GBI.[1]

Defendant was jointly charged with John Powers for assaulting Fred Holder, defendant's first cousin. Holder testified unequivocally that Powers came to his home at about 6:00 a.m. on Sunday, August

---

[1] The delay in reaching finality in this case is an indictment of the justice system. The crime was committed on August 2, 1981. Hooper was convicted on October 29, 1981. The timely motion for new trial was set to be heard January 14, 1982, but because it was anticipated that the trial transcript would not be ready, it was continued on November 30, 1981 until done. Nearly four years later, on August 13, 1985, defendant's motion for new trial was amended to include the grounds urged here. The 262-page transcript had been filed six months earlier, on February 8. The amended motion was denied on September 19, 1985, and notice of appeal was filed the next day. Nine months later, on May 20, 1986, the case, which has a 46-page record, was docketed here.

2, 1981, and awakened him. They went to a garage area where defendant appeared, hit Holder, and held him while Powers cut him repeatedly about the neck. Defendant pulled Holder's head to one side and told Powers to "cut his damn head off."

After they left, Holder got his 21-year-old son, who lived with him, to take him to the emergency medical service. He was treated with over one hundred stitches, according to the treating physician, and remained hospitalized for several days.

Powers was never apprehended. Defendant denied his involvement and claimed an alibi, that he was at home in bed. His wife testified that she woke up at some point during the night and her husband was there, and their son stated that when he arose at 5:00 a.m. to go fishing, he saw his father. It was approximately an hour's drive from defendant's home in Stone Mountain to Jefferson, the assault site. Defendant admitted being with John Powers on August 1 and 2 and admitted being in Jefferson with Powers earlier in the evening of the first and later in the day on the second.

The theory of the defense was that either Holder's son or some enemy had assaulted him, and that Holder perjuriously named defendant because of an alleged $2,212 debt defendant or defendant's son owed Holder. He sought to prove that Holder and Holder's son had previous altercations; that Holder was a GBI informant, raising a motive among numerous drug dealers and others to harm him; and that the debt allegedly owed was for stopped-payment checks given in exchange for equipment sold to defendant's son from Holder's tavern when Holder lost his liquor license due to illegal beer.

1. Defendant refers to a number of instances in the evidence in which he claims the court limited cross-examination in violation of his Sixth Amendment federal constitutional right to be confronted with the witnesses against him and his state right of cross-examination under OCGA § 24-9-64.[2] In connection with the latter of the dually recognized procedural rights, he invokes also OCGA § 24-9-68. It concerns the substance or content of the testimony he sought to elicit: "The state of a witness's feelings towards the parties and his relationship to them may always be proved for the consideration of the jury."

Several of the instances complained of related to defendant's own witnesses. Sustained objections to the direct examination of County Commissioner David Brown when trying to establish good character, the redirect examination of Ralph Worley regarding a refrigerator involved in the alleged debt, and the direct examination of GBI agent Bill Hutto regarding Holder's role as an informant do not call into

---

[2] Georgia's statute covers both civil and criminal cases, whereas the Sixth Amendment does not.

question the right to confrontation or cross-examination. Hence, there is nothing to review in this regard.

As to the remainder, the Sixth Amendment as construed by the United States Supreme Court controls the extent of the federal right. The Georgia Supreme Court recited and applied it in *Hines v. State*, 249 Ga. 257, 259-260 (2) (290 SE2d 911) (1982). There it is shown that the right includes cross-examination "directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." This is the same principle underlying OCGA § 24-9-68, which actually covers subject matter in both direct and cross-examination. The extent of cross-examination on an appropriate subject of inquiry is within the trial court's sound discretion. *Alford v. United States*, 282 U. S. 687, 694 (51 SC 218, 75 LE 624) (1931). Georgia refers to "the scope." *Gravitt v. State*, 220 Ga. 781, 785 (141 SE2d 893) (1965). The discretion is circumscribed by the right. *Benefield v. Benefield*, 224 Ga. 208, 209 (3) (160 SE2d 895) (1968).

Any limit on the cross-examination of the victim with respect to troubles with his son or prior assaults by his son, even if error, was cured by a wealth of later testimony by several witnesses including victim Holder's son, concerning their relationship and instances of altercation. *Morris v. State*, 166 Ga. App. 137, 141 (3) (303 SE2d 492) (1983).

In cross-examining the victim, defendant sought to establish that he had a motive for animosity towards defendant due to an alleged debt. As stated earlier, the state of a witness' feelings towards a party and his relationship to him is relevant, as further explained in *Arnold v. State*, 163 Ga. App. 10, 13 (4) (293 SE2d 501) (1982). Evidence of animus of the prosecutor may very well bear on his credibility as a witness. *Williams v. State*, 126 Ga. App. 302, 304 (1) (190 SE2d 807) (1972). "The defendant should be allowed a wide latitude to fully cross-examine the prosecutor upon these points [improper motives, credibility, state of feelings toward defendant]." *Duncan v. State*, 58 Ga. App. 551, 552 (2) (199 SE 319) (1938).

During this cross-examination about the debt, the court sustained an objection to counsel's testifying and then cautioned him not to go into irrelevant incidents. This did not stop defendant from fully putting this evidence of possible animus before the jury, which he did. Thus defendant was not curtailed from attacking the victim's credibility insofar as establishing a motive for his untruthfully naming defendant as the perpetrator is concerned. Where error is claimed, harm must be shown.

Defendant tried to show that the victim had "problems" with others besides defendant, and that the victim lied when he said he did not have any altercations with anybody else about this time. He

brought out on cross-examination that the victim had talked to the GBI about others. The court did not limit the questioning on this subject except to say it could be shown for impeachment purposes and that the question must elicit testimony relevant to the crime on trial. That being the purpose allowed by law, *Williams v. State*, 126 Ga. App. 302, 304, supra, no error is shown.

The admonition of the court to stay within the time frame of the incident on trial, when defense counsel was cross-examining the victim's son about assaults on his father, was not objected to. Moreover, he later elicited, unhampered, detailed testimony regarding the son's altercations and relationship with the father. Therefore, no error has been shown. *Williams v. State*, 178 Ga. App. 216 (2) (342 SE2d 703) (1986); see *Morris v. State*, supra.

In cross-examining the investigator from the sheriff's department, counsel asked whether he was familiar with "anything having to do with Dale Holder's jumping upon his father on different occasions?" The court sustained the state's objection on the ground of relevance. Defendant failed to show how this hearsay evidence, even if the answer was "yes" and the subject had been pursued, would be relevant. Thus he cannot complain. Moreover, others testified fully on the subject later. Again, even if there was error, no harm befell defendant. *Morris v. State*, supra.

Defendant sought to elicit testimony from the same witness about someone else's having shot the victim since the crime on trial, to show that he had enemies who might have inflicted this assault also. While the state's relevance objection to this testimony was sustained, the next witness did testify without objection concerning the incident. Therefore, even if the first instance were error, no harm befell defendant since the evidence was obtained through another witness.

We find no reversible error based on the deprivation of defendant's federal right to confrontation or of his state statutory right to cross-examination.

2. Hooper claims he was denied a fair trial in contravention of the Fourteenth Amendment due process clause. In particular, he points to denial of access to a paper signed by the victim which purportedly stated that defendant did not injure him. In the first place, the victim maintained all along that the co-defendant John Powers is the one who cut him. In the second place, after a request by defense counsel, the court reviewed the statement, gave a copy to him, and offered him the opportunity to recall the victim, which he refused. Having rejected the opportunity, he cannot now complain. *Jordan v. State*, 177 Ga. App. 637 (2) (3) (340 SE2d 269) (1986).

He also points to the exclusion of testimony by his witness, a GBI agent, regarding the victim's informing on other people, apparently in

connection with their scheme to put stolen equipment on defendant's property and then report him. Defendant argued that this tended to show the victim's ill feelings towards defendant and thus a motive for wrongly accusing defendant here. The defendant did not object to the court's ruling but rather moved on to questions concerning the victim's reputation, so there is no appealable point. *Jordan v. State,* supra at 637 (2) (3). He did not proffer what the evidence would have shown if it had been allowed. *Welsh v. Fowler,* 124 Ga. App. 369 (183 SE2d 574) (1971). Moreover, the subject was put before the jury by other evidence. Consequently, even if the GBI agent should have been permitted to give the details at that stage, no harm resulted which constituted a denial of a fair trial under the Fourteenth Amendment.

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

DECIDED JANUARY 29, 1987.

*Jerry C. Gray,* for appellant.
*Timothy G. Madison, District Attorney,* for appellee.