### 74899. STRICKLAND v. THE STATE.
(364 SE2d 872)

McMURRAY, Presiding Judge.

Defendant, indicted as a repeat offender under OCGA § 17-10-7 (b), was convicted of robbery, OCGA § 16-8-40, for taking a .22 caliber rifle away from George Hill. He appeals. *Held*:

1. Defendant first challenges his sentence as a recidivist on the ground that his 1980 plea to aggravated assault was not entered with full constitutional warnings and waiver, in violation of *Boykin v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) and *Andrews v. State*, 237 Ga. 66 (226 SE2d 597). This conviction was one of three

cited in the indictment as forming the basis for the repeat offender charge. See *Aldridge v. State*, 158 Ga. App. 719, 721 (4) (282 SE2d 189). The other two, earlier ones for felony theft (1966) and burglary (1970) were not challenged.

The 1980 plea transcript shows that defendant was represented by counsel and pled guilty to two charges, aggravated assault and a reduced charge of criminal trespass. It was a negotiated plea. Among other things, the court ascertained that defendant knew he had a right to a jury trial and desired to waive it.

In our opinion, the record was sufficient to demonstrate that defendant freely and voluntarily entered the 1980 guilty plea with an understanding of the consequences. Defendant clearly understood and waived his right to a jury trial. He complains that he was not advised of other rights associated with a jury trial, most notably, the right against self-incrimination, the right to confront witnesses and the right to assistance of counsel. However, defendant does not point out how he was prejudiced by the failure of the trial court to advise him of those rights. Defendant was represented by counsel at the guilty plea hearing and the transcript of the hearing shows that he discussed "the matter" with counsel before entering the plea. In addition, the record shows that defendant was "seasoned," having been tried by juries on two previous occasions. Given these facts, it is our view that any error in failing to advise defendant of his other rights was harmless beyond a reasonable doubt. *Goodman v. Davis*, 249 Ga. 11, 14 (287 SE2d 26).

2. Defendant contends the trial court erred in curtailing the cross-examination of the victim. We disagree. Put in context, defense counsel's cross-examination was merely an attempt to elicit evidence concerning specific acts of violence by the victim against third parties. Such evidence is inadmissible. *McFadden v. State*, 171 Ga. App. 447, 448 (2) (319 SE2d 878); *Guevara v. State*, 151 Ga. App. 444, 448 (5) (260 SE2d 491). The trial court properly prohibited defense counsel from doing indirectly what he was prohibited from doing directly.

3. Defendant also contends the trial court erred by allowing a witness, Freeman, to testify about certain statements made by defendant on the day after the robbery. This contention is without merit. The evidence was admissible "to show motive, or to show a course of conduct pointing toward and leading to the crime or to the concealment of the crime or the identity of the perpetrator thereof . . ." *Spurlin v. State*, 228 Ga. 2, 5 (4) (183 SE2d 765); *Graham v. State*, 171 Ga. App. 242, 254 (14) (319 SE2d 484).

4. In his final enumeration of error, defendant asserts the trial court erred by refusing to grant a new trial as a consequence of juror irregularity. (During a break in the trial, the juror handed the prosecutor a written joke about lawyers. The juror did not conceal his act.

It took place in the courtroom in the presence of the trial judge and defense counsel.)

In our opinion, any irregularity in the conduct of the juror was inconsequential; it did not require the grant of a new trial. *Smith v. State*, 218 Ga. 216, 222, 223 (126 SE2d 789). Moreover, the testimony of the juror amply demonstrated that defendant was not prejudiced or harmed by the irregularity. See *Hardy v. State*, 242 Ga. 702, 704 (3) (251 SE2d 289). Compare *Lamons v. State*, 255 Ga. 511 (340 SE2d 183).

*Judgment affirmed. Birdsong, C. J., Banke, P. J., and Pope, J., concur. Deen, P. J., concurs in the judgment only. Carley, Benham and Beasley, JJ., concur in part and dissent in part. Sognier, J., dissents.*

BEASLEY, Judge, concurring in part and dissenting in part.

I respectfully dissent with respect to Divisions 1 and 2 of the opinion of the majority; and I fully concur in Divisions 3 and 4.

1. The question was presented to the trial court by the filing of a "Notice of Objection to or Demurrer to Count Three of the Indictment." Prior to trial, the court conducted a motions hearing on this and other issues, and after considering the transcript of that plea, denied the motion, thereby finding that the plea procedure did not fail in the particulars claimed by defendant.

After the jury returned its guilty verdict on the robbery count, the court sentenced defendant pursuant to the recidivist count, based in part on the 1980 conviction which had been introduced in evidence. No objection to it was then voiced by defendant, which would ordinarily be the proper time for such. *Callahan v. State*, 148 Ga. App. 555, 556 (251 SE2d 790) (1978); *Aldridge v. State*, 158 Ga. App. 719, 722 (282 SE2d 189) (1981). However, defendant was not required to object again here, because the matter had already been ruled on adversely to him, at the outset of the trial, pursuant to his foresighted inquiry which had allowed the state to marshal its evidence and the court to take the issue under advisement.

On appeal defendant complains that he was not advised at the plea-taking of certain consequences of his plea, namely, that he was waiving certain constitutional rights. This collateral attack is permissible. See *Callahan v. State*, supra at 556 (3). He lists the rights to a jury trial, to confront witnesses, to subpoena witnesses, to testify and offer other evidence, to assistance of counsel during trial, not to incriminate himself, to be presumed innocent, and to be informed of the maximum possible sentence. These were all raised below except there was no complaint about the rights to subpeona witnesses and to testify and offer other evidence, so I do not address those.

The 1980 plea transcript shows that there was no indication that

defendant had been apprised by anyone of the rights listed above other than the right to a jury trial.

For a guilty plea to be valid, it must be shown that "(1) the defendant has fully and voluntarily entered the plea with (2) an understanding of the nature of the charges against him and (3) an understanding of the consequences of his plea." *Goodman v. Davis*, 249 Ga. 11, 13 (287 SE2d 26) (1982). Our Supreme Court recognized that "[t]he significance of requiring that a guilty plea be knowing and voluntary is magnified by the fact that a number of constitutional rights are involved in a waiver that takes place when a plea of guilty is entered. . . . In *Boykin* the court noted that the right against self-incrimination, the right to trial by jury and the right to confront one's accusers are all waived. . . ." Id. In that case the focus was on the right to remain silent, or against self-incrimination. The Court concluded that failure to specifically advise of this right did not per se prevent the plea from being founded on an understanding of the consequences. It took into account that defendant did not allege any prejudice from the failure, was "a seasoned defendant," was represented by counsel, and other factors which satisfied it that the failure was harmless beyond a reasonable doubt in that case.

Applying the same analysis here, although the mentioned factors are present, the absence of any assurance that defendant was apprised of so many of the rights to which he was entitled prevents the conclusion that defendant validly waived them. Consequently, the sentence as to Count 3 should not stand even if the remaining enumerations were rejected. In reaching this decision, guidance is derived from the standards set out in the following cases: *State v. Germany*, 245 Ga. 326 (265 SE2d 13) (1980); *Andrews v. State*, 237 Ga. 66 (1) (226 SE2d 597) (1976); *Roberts v. Greenway*, 233 Ga. 473 (211 SE2d 764) (1975). See also Council of Superior Court Judges of Georgia, Criminal Benchbook/Ga. Superior Courts, July 1981, p. 62 et seq.

2. Defendant complains of the trial court's refusal to allow cross-examination of Hill concerning Hill's statements that he had not used guns on anyone.

Defendant did not dispute that on the night in question he had been in an altercation with victim Hill. His claim was that, instead of initiating the conflict as claimed by Hill, defendant was jumped and assaulted by Hill with the rifle, which defendant then removed from Hill's possession and retained, resulting in the robbery charge. Defendant, who is white, admitted calling Hill derogatory racial names. The prosecution's theory was that defendant assaulted Hill due to his hatred for blacks. Defendant's theory of defense was that he merely removed the gun from Hill in order to protect himself and that he meant to return the rifle later, thus setting up the defense of justification. OCGA §§ 16-3-20; 16-3-21.

Prior to the start of trial, pursuant to the state's motion in limine, a hearing was held regarding defendant's right to elicit evidence of other violent acts of the victim, either as proof of his reputation for violence or as impeachment. At that time, the court preliminarily granted the state's motion, but reserved defendant's right to make a proffer out of the jury's presence as to other acts or matters of impeachment.

After Hill had testified and had been partially cross-examined, defendant made his proffer. Two witnesses were called — Dean and Long. Dean testified that he had known Hill for 18 years. He knew of an incident in which Hill shot at another. Long stated that he had witnessed Hill shoot at a car full of kids who had called him racial names. Because the proffer was taking an undue amount of time, the court directed defendant to ask Hill specific questions and the court would rule, seriatim.

Thereafter, while Hill was being further cross-examined, he was asked the following: "Your statement is you never had to use a gun against nobody? A. I haven't yet." Hill then stated that he had never owned another .22, having bought the one in question the previous year. Hill was asked questions about whether he would have shot at those persons who recently stole a rototiller from him, if he had been present. He testified "Oh, I don't shoot nobody." When defendant's counsel attempted to pursue this so as to use the impeaching evidence if the witness did not impeach himself, the state objected to the line of questioning and the court sustained the objection.

Defendant moved for a mistrial because of the court's restriction of his cross-examination of Hill, on the ground that Hill had made the statement "I don't shoot nobody" and defendant had been prevented from confronting him with incidents showing the contrary. The motion was denied.

At the close of the trial, defendant tendered into the record numerous accusations of Hill for acts of violence, including a 1971 charge of shooting seven holes into an occupied automobile and a 1974 charge of pointing a .22 rifle at another. The 1971 charge resulted in an acquittal and the 1974 charge was resolved by entry of a nolle prosequi because of the prosecuting witness' recommendation. The purpose of this tender was to perfect the record, counsel stating, ". . . I was going to put in a list of incidents where Mr. Hill says I haven't shot anybody. I wanted to cross-examine him further about that statement and I wanted to put in somehow it or a list of incidents that I wanted to talk to him about where he had shot somebody. . . . [A]ll I am trying to do is preserve the record on what I contend I was going to ask him about."

"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject

always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions in memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." *Davis v. Alaska*, 415 U. S. 308, 316 (94 SC 1105, 39 LE2d 347) (1974), quoted in *Hines v. State*, 249 Ga. 257, 259 (2) (290 SE2d 911) (1982).

A witness may be impeached by disproving facts testified to by him. OCGA § 24-9-82. Here, defendant proffered to the court one witness who had seen Hill shoot into an occupied automobile and one witness who knew of another shooting incident along with two accusations alleging pointing and shooting a weapon at another. While the accusations were not admissible evidence, they were not tendered as such, but only to show other incidents about which defendant wanted to cross-examine Hill. The fact that Hill was not convicted of these two incidents did not preclude defendant's questioning Hill about them in an effort to impeach him.

In *Lumpkin v. State*, 151 Ga. App. 896 (1) (262 SE2d 208) (1979), a defendant on trial for robbery took the stand and stated that he had never robbed a convenience store. He was then questioned about an outstanding indictment for robbery on which he had not yet been tried. This was held to be proper impeachment. In *Hammond v. State*, 169 Ga. App. 97 (311 SE2d 523) (1983), a defendant accused of D.U.I. and other traffic offenses took the stand and testified that he did not ride his motorcycle when he had been drinking. The state was allowed to introduce evidence of a prior alcohol-related motorcycle accident involving defendant.

Here, the limitation of cross-examination complained of is not that defendant was not allowed to show the victim's general character for violence, see *McFadden v. State*, 171 Ga. App. 447, 448 (2) (319 SE2d 878) (1984), but that defendant was not allowed to ask further questions about the victim's statement that he had never shot at anyone. If the questions had been allowed, two results were possible: Hill could have admitted the prior shooting incidents, impeaching himself and buttressing defendant's justification defense, or Hill could have denied them, giving defendant the opportunity to call Dean and Long and perhaps others to testify to shooting incidents, thereby impeaching his accuser by this alternate method.

Because the state's case depended greatly on the testimony of Hill, it was error for the court to restrict the cross-examination of him. Under these circumstances, it cannot be said that the error was harmless. See *Hooper v. State*, 181 Ga. App. 645, 647 (1) (353 SE2d 843) (1987).

I am authorized to state that Judge Carley joins this opinion as to Division 2 of the majority opinion and Judge Benham joins as to

450

Divisions 3 and 4 of the majority opinion.

DECIDED DECEMBER 4, 1987 —
REHEARING DENIED DECEMBER 18, 1987·—

*Roger L. Curry, Roland R. Castellanos*, for appellant.
*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys*, for appellee.