### A89A0801. SPIVEY v. THE STATE.
(386 SE2d 868)

BEASLEY, Judge.

Spivey was convicted of rape of B. D. (OCGA § 16-6-1) and armed robbery of B. D. and her boyfriend Andre W. (OCGA § 16-8-41 (a)) on March 21, and armed robbery of Terry S. on March 22. He thereafter pleaded guilty to two severed charges of possession of a firearm by a convicted felon (OCGA § 16-11-31 (b)) on both dates.

1. Defendant contends the evidence was insufficient, citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The linchpin of the argument is that since defendant was bald at the time of the incidents and all four eyewitnesses claimed the attacker had hair, the evidence was legally insufficient. All victims and the attacker were black. Supplementary argument is that there was no physical evidence and that the alibi was not impeached.

Viewing the evidence in favor of the verdict, *Thomas v. State*, 173 Ga. App. 810, 812 (2) (328 SE2d 422) (1985), it showed that B. D. and Andre, both 15 years old, were parked in Exchange Park in his

V. W. around 11:00 p.m. on Saturday, March 21, when a man wearing a ski mask came up to her window, pointed a silver gun at her face and demanded that she open the door. The man was also carrying a black flashlight with red trim. He got in the car and broke the overhead light with the flashlight and raised the mask off his face. He asked them where they lived and demanded money. When told they had none, he ordered them to disrobe, tied Andre's hands, and made him lie face down in the driver's seat with his face toward the door. He raped B. D. in the car. A helicopter flew over and he told them he had just killed somebody and left. He returned, made B. D. get out of the car and raped her on the hood of the car. He took a ring and a chain from B. D. and two chains from Andre.

Both victims described the assailant to police as approximately 5' 10," of medium build, 160 pounds, with a mustache and beard. B. D. said he had more stubble than beard and a medium dark complexion. He was wearing a navy peacoat. Andre said he had a real "low" haircut and B. D. said he had very little hair.

Swabs and blood samples taken from B. D. showed the presence of a large amount of type A semen and a small amount of type B. Defendant had type A blood and was a secreter. Andre was type B. B. D. acknowledged having had intercourse with Andre the day before the rape. The serologist opined that this would account for the lesser amount of type B and the large quantity of A.

The next night, Terry S. and R. H., both 17 years old, were parked behind a club on Memorial Drive and were sitting in the back seat of the car. He got out of the car to get in the front seat while R. H. climbed over. When Terry stepped out of the car, a silver gun was pointed at his face by a man wearing a skull cap.

He and his girl friend were robbed. Terry was then tied up with his own belt and made to lie in the back seat. The man got in the front seat with R. H., checked Terry's pockets again, and asked if they had anything else. He got out of the car, apparently to look for something with which to wipe the car off. He returned, asked both where they lived, and went away. He returned again and asked if they had any weapons in the car. He looked under both seats, left again, and R. H. attempted to shut the front door. He returned and struggled with her over the door, which she did get locked. He threatened to kill them if she did not open the door. She and Terry, who managed to free himself, got the car started and escaped as the assailant was attempting to break the car window with a brick. They both described the assailant as about 5' 9" with a medium build and a mustache. Terry said he had "holes" in his face as if he had just shaved. R. H. said the attacker had hazel or gray eyes.

On March 26, B. D. and Andre separately identified defendant in a lineup. Terry and R. H. independently of each other picked defend-

ant's photo from a spread. All four positively identified defendant at trial.

Four days after the second incident defendant was arrested as he was rummaging through a pile of discarded clothes behind a Goodwill store at 1:00 a.m. The officer stopped to investigate the activity and asked defendant for identification. Defendant went to a truck, where the officer saw a peacoat on the seat. He noticed defendant's resemblance to a "bolo" (a lookout advisory for officers) and arrested him. In the truck he also found a .32 nickel plated revolver under the driver's seat a red and black flashlight, a black skull cap, and a ski mask (of a different color than that described by Andre and B. D.), as well as a map of the area around the park in which the first incident occurred.

Despite the assertion made in defendant's brief (unsupported by references to the record as required by Rule 15 (c) (3) (ii)) that "all four eyewitnesses claimed their attacker had hair on his head," the only witnesses who made reference to head hair were Andre and B. D., as set out above; both Terry and R. H. testified that the attacker wore a skullcap. At trial, defendant's counsel extensively cross-examined B. D. about the variance in her preliminary hearing description of hair and her trial description.

The fact that one of four eyewitnesses, none of whom waivered in their identification of defendant by photo or in person, may have varied in verbal description of the assailant's hair does not render the evidence, taken as a whole, legally insufficient. Our responsibility is only to judge sufficiency and not weight. *Thomas*, supra. Even setting aside the physical evidence, which was substantial, "[a] jury verdict in a criminal case can rest solely on the testimony of a single eyewitness, and whether her identification should be accepted is a question for the jury." *Fredericks v. State*, 172 Ga. App. 379, 380 (1) (323 SE2d 265) (1984). The evidence was sufficient.

2. Defendant contends that the court's exclusion of a portion of the testimony of his niece deprived him of his federal Sixth and Fourteenth Amendment right to prove his defense. Part of defendant's trial strategy was to show that the police accused him of this rape only because he had previously been convicted of rape.

The niece testified that when she answered the door to the home in which defendant resided and was told by the police that defendant was accused of raping a sixteen-year-old girl, she fainted. The excluded evidence, as proffered, was that after she fainted, she was not aided by the police and they stepped over her to go search defendant's room. The trial court excluded her testimony on the basis that she could only testify to what she saw and heard, not to what happened while she was unconscious.

Defendant's trial counsel acquiesced in the court's ruling so de-

fendant cannot complain of it as such. *Hooper v. State*, 181 Ga. App. 645, 648 (2) (353 SE2d 843) (1987); *Hammond v. State*, 169 Ga. App. 97, 98 (4) (311 SE2d 523) (1983). Counsel then stated that "if the police stepped over her," this would weaken the veracity of the police. No proffer of any witness who could so testify was made. Thus no ruling on this evidence was required and there is nothing for review. *Owens v. State*, 178 Ga. App. 750, 751 (2) (344 SE2d 722) (1986); *Miller v. State*, 162 Ga. App. 759, 760 (1) (292 SE2d 481) (1982).

3. Enumerated is the court's denial of the motion for new trial on the ground that trial counsel was ineffective, depriving defendant of his federal Sixth Amendment right. At the hearing, both trial counsel and defendant testified. See generally *Smith v. State*, 186 Ga. App. 303, 305 (1) (367 SE2d 573) (1988).

Those bases for the claim not contained in the motion for new trial have been waived. (Subsections 3 (f) and (g).) *Thompson v. State*, 257 Ga. 386 (359 SE2d 664) (1987).

"To prove he has received ineffective assistance of counsel, '(t)he defendant must show both that counsel's performance was deficient and that this deficiency prejudiced the defense.' *Brogdon v. State*, 255 Ga. 64, 67 (335 SE2d 383) (1985); *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). 'Thus counsel's performance will not be found to be deficient if it falls within the range of "reasonably effective assistance." ' *Brogdon*, supra at 68." *Williams v. State*, 257 Ga. 311, 312 (2) (357 SE2d 578) (1987).

Although the trial court incorrectly ruled that defendant had not waived his attorney/client privilege by calling into question his attorney's competence, see *Roberts v. Greenway*, 233 Ga. 473, 477 (3) (211 SE2d 764) (1975); *Peppers v. Balkcom*, 218 Ga. 749, 751 (2) (d)) (130 SE2d 709) (1963), this error did not prevent adequate inquiry of trial counsel for our purposes in evaluating the trial court's denial of the motion for new trial on this ground.

Defendant complains that his character was improperly placed into evidence, including the specific facts of his prior rape conviction as well as four prior burglary convictions; that the jury was told he had spent 19 years in jail; that counsel failed to object to the jury charge on alibi; that he advised defendant after conviction of the other charges to plead guilty to possession of a firearm by a convicted felon; and that illegal evidence was allowed to be introduced at sentencing.

As to the prior rape and burglary charges, both defendant and his trial counsel testified that they had discussed on numerous occasions his defenses of alibi and good character. Counsel, who had been retained by defendant's family, visited him in jail a dozen times; spent hours interviewing police officers and witnesses; was given, upon motion and request, full access to the prosecution's file; and went to the

crime scenes himself. While counsel did not go into his specific discussion with defendant pursuant to the trial court's ruling on privilege, the record shows that the decision for defendant to testify and to bring up the now objected-to matters was a mutual one and part of the overall trial strategy in which defendant acquiesced and participated. Defendant had become an active member of Jehovah's Witnesses and claimed to have turned his life around. He had helped build a new meeting hall and participated as a missionary witness, which was the explanation given for the marked map in his vehicle. He collected old clothes from dumpsters and recycled them to the needy, explaining his hunt through the dumpster and the clothing in his truck. The theory was that defendant was benefited by his own testimony regarding these matters, as well as his minister's, and that it was better for the defense to bring out his record rather than allow the prosecution to do so on cross-examination. See *Jones v. State*, 257 Ga. 753 (363 SE2d 529) (1988).

"Trial strategy and tactics do not equate with ineffective assistance of counsel. Effectiveness is not judged by hindsight or by the result. Although another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that defendant and his present counsel disagree with the decisions made by trial counsel does not require a finding that defendant's original representation was inadequate. *Solomon v. State*, 247 Ga. 27, 28 (1) (277 SE2d 1) (1981); *Kervin v. State*, 178 Ga. App. 601, 605 (3) (344 SE2d 441) (1986); *Harrell v. State*, 139 Ga. App. 556, 557 (2) (228 SE2d 723) (1976)." *Hosch v. State*, 185 Ga. App. 71, 72 (2) (363 SE2d 258) (1987).

Strategy also explains counsel's discussing with defendant a plea of guilty to the firearms charges. He explained his correct legal conclusion that if defendant were found to be in possession of the weapon at all, regardless of the verdicts on the remaining charges, he would be guilty of at least one count of the offense. OCGA § 16-11-131 (b).

The court had already indicated that it would sentence defendant concurrently if the plea were entered. Defendant's plea transcript shows that he was fully advised of all of his rights, including the right to plead not guilty and have a trial. No evidence of lack of effective assistance is presented as to the choice made.

Complaint is made that representation was ineffective in allowing the court to give a charge on alibi held unlawful by some federal courts. Trial counsel submitted requests to charge, including one on alibi. He testified that he did not object to the charge given by the court, which came from the Superior Court Suggested Pattern Jury Instructions, Vol. 2, p. 30 (1984), because it was comparable to his request to charge on the subject. Any objections to the charge as

given were waived. *Allen v. State*, 177 Ga. App. 600, 603 (340 SE2d 246) (1986); *Jackson v. State*, 246 Ga. 459 (271 SE2d 855) (1980). The charge was a correct statement of the law, specifically approved by the Supreme Court, *Patterson v. State*, 233 Ga. 724, 730, fn. 2 (213 SE2d 612) (1975). Failure to object was harmless. See also OCGA § 5-5-24 (c).

The two federal cases cited by defendant in support of his argument are not binding in the state courts. *Head v. State*, 253 Ga. 429, 430 (1) (322 SE2d 228) (1984); *Felker v. State*, 252 Ga. 351, 361 (1 b) (314 SE2d 621) (1984). In addition, *Dixon v. Hopper*, 407 FSupp. 58, 65 (4) & (5) (M.D. Ga. 1976) deals with a charge substantially different from that in the present case, and *Poole v. Georgia*, 551 F2d 683 (5th Cir. 1977) finds no error in a charge similar to the one at issue.

Enumeration 3 (c) regarding illegal evidence at the sentencing hearing is not supported by argument or citation of authority and is deemed abandoned. Rule 15 (c) (2).

*Judgment affirmed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED SEPTEMBER 6, 1989 —
REHEARING DENIED OCTOBER 10, 1989 —

*J. M. Raffauf*, for appellant.

Eurace Spivey, *pro se.*

*Robert E. Wilson, District Attorney, Robert M. Coker, Fran Shoenthal, Assistant District Attorneys*, for appellee.