## A99A0455. WILHELM v. THE STATE.

(516 SE2d 545)

RUFFIN, Judge.

Randy Wilhelm was convicted of two counts of child molestation and one count of cruelty to children. He appeals, challenging the sufficiency of the evidence. Because the evidence was sufficient to support the convictions, we affirm.

The standard of review applied to an appeal of a criminal conviction is as follows:

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. The testimony of a single witness is generally sufficient to establish a fact.

(Punctuation omitted.) *Newman v. State*, 233 Ga. App. 794 (1) (504 SE2d 476) (1998).

Viewed in a light most favorable to uphold the verdict, the evidence showed as follows. On June 21, 1997, Wilhelm went to the races at Winder-Barrow Speedway with Deborah Bowden, her son Michael, and Michael's friend A. S., a ten-year-old girl. During the races, Wilhelm hugged A. S., kissed her on the ear, and told her he would never hurt her. Chris Mincey, a friend of A. S. who also went to the races that night, testified that Wilhelm asked him to French kiss A. S., but he refused. Mincey's father, Billy Mincey, testified that he heard Wilhelm make comments about having tattoos and a chain or ring on his genital area.

At about midnight or 1:00 a.m., Wilhelm, Bowden, Michael, and A. S. left the races and went to a Waffle House restaurant. As they were eating, Wilhelm said that his penis was pierced and had a tattoo on it. The group returned to Bowden's house about 2:30 a.m., and A. S. received permission from her parents to spend the night. As Wilhelm, Bowden, Michael, and A. S. were watching television, Wilhelm told Michael to kiss A. S. on the mouth. Bowden told Wilhelm not to say that. Wilhelm said that he wanted to show the others an earring or a tattoo on his penis. Wilhelm, who was facing A. S. and about a foot or two away from her, then pulled his pants down, exposing his penis to her. A. S. testified that she saw his penis "[a] little

bit," but then turned her head away. After Bowden told Wilhelm to stop, he pulled up his pants. Bowden then went to bed.

After Bowden left, Wilhelm began watching a pornographic movie on television. A. S. was sitting beside him on the couch, and Michael was lying on another couch. Michael fell asleep after a few minutes. Wilhelm offered A. S. some of his beer and asked if she had ever kissed Michael. Wilhelm then grabbed A. S.'s leg and began rubbing her foot on his genital area while looking at the television. A. S. pulled her foot away, at which point Wilhelm asked A. S. to kiss him. A. S. said that she had to use the restroom, and then went into Bowden's room and telephoned her mother, asking her to come get her. A. S.'s mother arrived a few minutes later, and A. S. ran outside to meet her. A. S. told her mother what had happened, and the mother called the sheriff's department later that morning.

Wilhelm was charged with two counts of child molestation, one for exposing his penis to A. S. and the other for placing A. S.'s foot against his genital area. He was also charged with cruelty to children for placing A. S.'s foot against his genital area. He was convicted on each of these charges.[1]

1. Wilhelm contends that there was insufficient evidence to support the charge of child molestation relating to the exposure of his penis. He claims that A. S. told Phyllis Marstellar, a child abuse investigator with the Jackson County Department of Family & Children Services, that she saw a tattoo and a ring on Wilhelm's penis when he pulled down his pants. However, Wilhelm was physically examined by investigators before trial, and they apparently found no tattoos or piercings on his penis. Wilhelm contends that this conflict rendered the evidence insufficient to support his convictions.

This contention is without merit. According to Marstellar, A. S. told her that Wilhelm's private parts "just had like tattoos," but did not specifically describe the tattoos. Marstellar did not testify that A. S. specifically told her she saw a ring in Wilhelm's penis, although A. S. told her that Wilhelm claimed to have such a ring and pulled down his pants to show it to her. At trial, A. S. testified that she saw Wilhelm's penis only "a little" before she turned her head away. When questioned about what she told the investigator, she testified as follows:

> Q. [Y]ou told the police that you saw tatoos [sic] on his private parts; isn't that right? A. I saw something. But I don't remember what it was. Q. Do you remember telling [the investigators] that it was tattoos? A. Yeah. That's what I

---

[1] Wilhelm was acquitted of a separate charge of sexual battery relating to a different victim.

thought he said it was, but I didn't see it. Q. Do you remember telling them that you saw tattoos though? A. Uh-uh. (Negative). Q. You don't remember telling them that? A. No. I told them I thought I did.

Even if the jury believed Marstellar's account of her conversation with A. S., it could have concluded that since Wilhelm had been talking about having tattoos on his penis, and since A. S. got only a brief glimpse of his penis when he exposed himself, A. S. might have initially mistaken something for a tattoo. Moreover, A. S.'s identification of Wilhelm as the perpetrator was not based upon the existence of a tattoo. Although A. S.'s statement to investigators that she thought she saw a tattoo may have raised questions as to her credibility in general, the credibility of a witness is a matter for the jury to resolve. *Thompson v. State*, 233 Ga. App. 364, 366 (3) (504 SE2d 234) (1998). "[T]hat some evidence offered by a witness seems contradictory to [her] own or to some other's, or incomplete or uncertain, does not automatically discredit the evidence given by that witness[,] for it is the function of the trier[ ] of fact to determine to what evidence it gives credence." (Punctuation omitted.) *Norris v. State*, 220 Ga. App. 87, 88 (1) (469 SE2d 214) (1996). Viewed in the light most favorable to the verdict, the evidence was sufficient for the jury to conclude beyond a reasonable doubt that Wilhelm was guilty of the crime charged.

2. Wilhelm also contends that the evidence was insufficient to support the charge of child molestation relating to his placing A. S.'s foot against his genital area. Wilhelm notes that, at trial, A. S. testified that his private "[f]elt like jello," although she had previously told an investigator that "it felt big." Although A. S. may have used different words to describe what she felt with her feet, the evidence was clearly sufficient for the jury to conclude that Wilhelm was guilty on this charge.

3. Finally, Wilhelm contends the evidence was insufficient to support his conviction of cruelty to children. OCGA § 16-5-70 (b) provides that "[a]ny person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." Wilhelm argues that there was no evidence A. S. experienced cruel or excessive mental pain as a result of the incident, as alleged in the indictment.

A. S. testified that when she fled Wilhelm's house and got into her mother's car, she was "so scared" that she could not tell her mother what had happened. She testified that "[i]t hurt my — whenever he did that, it hurt my feelings." Her mother testified that when A. S. called her to come pick her up, she sounded "real nervous" and

"really scared." According to the mother, when A. S. got into her car, she was "real nervous . . . and she didn't want me to touch her." When they got home, A. S. told her mother that "there was somebody at Deborah's that scared [her]." The mother testified that A. S. was "upset" as she described what had happened. She testified that A. S. had trouble sleeping after the incident and did not "want to be as close to people as she used to be. . . . She just don't want me to love on her as much and everything as she used to." She testified that A. S. experienced severe nausea for a few days after the incident whenever she would eat.

As we have previously held,

> [t]he determination of what is cruel or excessive physical or mental pain is to be made by the jury. "Cruel" and "excessive" are adjectives which inherently require a consideration of degree; the law does not set a bright line but leaves to the trier of fact, taking into account societal norms generally accepted, whether certain behavior inflicts "cruel" or "excessive" pain. . . . There will be a gray area where some would say it is and some would say it is not, and neither is wrong as a matter of law. There will be other areas on each end of the scale. . . . We must determine only whether the circumstances here, taking into account the evidence in favor of the finding and all reasonable inferences from that evidence, would prohibit the finding made by the jury.

(Punctuation and footnotes omitted.) *Sims v. State*, 234 Ga. App. 678, 679-680 (1) (a) (507 SE2d 845) (1998). Although the evidence regarding the extent of A. S.'s mental pain may not have been overwhelming, we believe that such evidence, viewed in the light most favorable to the verdict, was sufficient to support the jury's finding. See *Clark v. State*, 234 Ga. App. 503 (507 SE2d 241) (1998).

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED APRIL 16, 1999.

*Kathleen J. Anderson*, for appellant.
*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.