## A06A1431. JACKSON v. THE STATE.
### (636 SE2d 694)

BERNES, Judge.

A Chatham County jury convicted Jermaine Corey Jackson of aggravated assault and criminal attempt to commit robbery. Jackson appeals from the denial of his amended motion for new trial, raising the general grounds with respect to his aggravated assault conviction. He also contends that the trial court improperly restricted his

questioning of the jury panel about racial bias during voir dire and that his trial counsel was ineffective. For the reasons discussed below, we affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citation omitted.) *Wilhelm v. State*, 237 Ga. App. 682 (516 SE2d 545) (1999).

So viewed, the evidence reflects that on August 12, 2003, at approximately 2:30 p.m., the victim, an elderly resident of Chatham County, had finished her shopping at the local Piggly Wiggly and was returning to her vehicle with her groceries. She was carrying her purse over her shoulder. As the victim walked to her car, a green Ford Thunderbird pulled up next to her, and a black male leaned out of the front passenger window and attempted to snatch her purse. Although the attempted purse snatching was unsuccessful, the victim was struck by the Thunderbird during the struggle over the purse and fell down on the concrete parking lot, sustaining multiple abrasions and bruises on her face, arms, and legs. After the victim fell to the ground, someone yelled "You hit that lady," but the driver of the Thunderbird "hit the gas" and fled from the parking lot.

A witness to the incident provided the police with the license tag number of the subject vehicle, which the witness described as a green car with three black males inside who were laughing after the victim fell to the ground. The next day law enforcement located the green Thunderbird driving around Savannah and apprehended the occupants, two black males later identified as defendant Jackson and his co-defendant, Tevin Peters.

Following his apprehension, Jackson gave a statement to the investigating detective in which he admitted participating in the attempted purse snatching. According to Jackson, on the day of the attempted purse snatching, he had been driving around town in a green Thunderbird with Peters when the car ran out of gas. After he parked the car in front of his home, he and Peters began walking through the neighborhood, where they encountered an acquaintance, a black male named "Jarrell," who asked if they wanted "to go on a

lick."[1] Jackson answered in the affirmative. After obtaining gas for the Thunderbird, Jackson, Peters, and Jarrell began driving around Chatham County. Eventually, Jackson drove the vehicle to the Piggly Wiggly, where Jarrell leaned out the passenger window and unsuccessfully attempted to grab the elderly victim's purse. The three men fled from the scene and ended their drive.

1. Raising the general grounds, Jackson contends that there was insufficient evidence to convict him of aggravated assault. We disagree.

> The offense of aggravated assault has two essential elements: (1) that an assault, as defined in OCGA § 16-5-20 be committed on the victim; and (2) that it was aggravated by (a) an intention to murder, rape, or to rob, or (b) use of a deadly weapon. OCGA § 16-5-20 states: (a) a person commits the offense of simple assault when he either: (1) Attempts to commit a violent injury to the person of another; or (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury.

(Citation omitted.) *Thompson v. State,* 277 Ga. App. 323 (1) (626 SE2d 825) (2006). The indictment averred that Jackson committed aggravated assault in that he "did unlawfully make an assault upon the person of [the victim], with the intent to rob." See OCGA § 16-5-21 (a) (1). The jury was entitled to find Jackson guilty if he directly committed the aggravated assault or intentionally aided or abetted its commission. OCGA § 16-2-20 (b) (1), (3).

The state presented sufficient evidence of Jackson's guilt for the offense as charged. Jackson admitted at trial that he was driving the Thunderbird when Jarrell reached out of the car window in an attempt to snatch the elderly victim's purse, resulting in her being struck by the car and falling to the ground. Nevertheless, he contends that the state failed to show that he shared in Jarrell's intent to rob the victim. Jackson's argument is belied by his confession to the police detective following his apprehension. At trial, the detective testified that Jackson confessed that he had agreed "to go on a lick" with Jarrell and that he "knew what Jarrell was going to do" when he drove the Thunderbird into the Piggly Wiggly parking lot and approached the elderly victim. A videotape of the interview was later played to the jury.

"Of course, an uncorroborated confession, standing alone, cannot support a conviction. However, a confession, freely and voluntarily

---

[1] A "lick" is street terminology for a robbery.

made, is evidence of the highest character, and any corroboration thereof will be sufficient to sustain a conviction." (Footnotes omitted.) *Carswell v. State*, 268 Ga. 531, 532 (1) (491 SE2d 343) (1997). Here, there was ample corroboration of Jackson's confession, including the elderly victim's testimony; the testimony of the eyewitness who reported the license tag number of the fleeing vehicle to the police and saw three black males inside the vehicle laughing; and the testimony of another witness who identified Jackson as one of the black males in the Thunderbird.

Nor is it of any consequence that Jackson's testimony at trial differed from his prior confession. "[I]t is the function of the triers of fact to determine what evidence it gives credence" and to "resolve[ ] any apparent conflicts or uncertainties in the evidence." (Citation and punctuation omitted.) *Williams v. State*, 236 Ga. App. 790, 792 (513 SE2d 757) (1999).

Viewed in the light most favorable to the verdict, the evidence was sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to find Jackson guilty beyond a reasonable doubt of aggravated assault. The trial court therefore did not err in denying Jackson's motion for a new trial on this ground.

2. Jackson next argues that the trial court erred in refusing to allow his trial counsel to ask the jury panel during voir dire whether any of them held a belief that a substantial part of serious violent crime in Chatham County was committed by young black males. Again, we disagree.

While the trial court ruled that defense counsel could not ask that one question to the jury panel, the trial court went on to clarify that his ruling was limited to the question as phrased and "that there are some questions in this area you can ask, but I think that broad question . . . is not tailored to anything having to do with this particular case." The trial court later reiterated to defense counsel that his ruling was limited to "the broad questions today as you have stated those questions." The subsequent voir dire was not transcribed.

We find no reversible error. Georgia courts "have repeatedly upheld the discretion of the trial court to restrict voir dire to questions dealing directly with the specific case, and to prohibit overly broad questions." *Cox v. State*, 248 Ga. 713, 713-714 (3) (285 SE2d 687) (1982). Furthermore, given the absence of a voir dire transcript,

> it is impossible for us to know exactly what questions were asked of the prospective jurors and if, in the context of the full voir dire, the trial court improperly limited [Jackson's] ability to discover bias or prejudice harbored by any prospective juror. Absent a transcript of the voir dire, this court must

presume that this portion of the trial was conducted in a regular and proper manner.

(Footnotes omitted.) *Campbell v. State*, 253 Ga. App. 325, 326 (2) (558 SE2d 857) (2002). Accord *Cherry v. State*, 230 Ga. App. 443, 444 (1) (496 SE2d 764) (1998) (finding no reversible error when trial court disallowed single voir dire question pertaining to possible racial bias, but defense counsel was nevertheless allowed to explore the issue through other questions posed to the jury panel). Jackson thus has failed to show from the record that the trial court committed reversible error in its control of the voir dire examination.

3. In his final enumeration, Jackson contends that he received ineffective assistance from his trial counsel. Specifically, he asserts that his trial counsel was deficient when he requested that the entire videotape of Jackson's interview with the police detective be played to the jury, rather than only the limited portions preselected by the state. He further asserts that the playing of the entire videotape to the jury was prejudicial to his defense. We do not agree.

"To prove he has received ineffective assistance of counsel, [Jackson] must show both that counsel's performance was deficient and that this deficiency prejudiced the defense." (Citations and punctuation omitted.) *Spivey v. State*, 193 Ga. App. 127, 130 (3) (386 SE2d 868) (1989). See also *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). "A trial court's determination that a defendant was not denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous." (Citation and punctuation omitted.) *Peeples v. State*, 234 Ga. App. 454, 457 (3) (507 SE2d 197) (1998).

Jackson has failed to show that his trial counsel's request to have the entire videotape played to the jury was deficient. Rather, the record reflects that trial counsel's decision was one of informed trial strategy. At the motion for new trial hearing, Jackson's trial counsel testified that if part of the tape was going to be played anyway, he wanted the entire tape played, which he believed would be more beneficial for his client. And, the trial transcript reflects that by having the entire videotape played, trial counsel was able to emphasize during the subsequent cross-examination of the detective that he had deliberately misinformed Jackson at several points during the interview, and had threatened Jackson that if he did not cooperate, he might be charged with additional unrelated crimes. Under these circumstances, the trial court's determination that Jackson received effective assistance of counsel was not clearly erroneous. See *Powell v. State*, 198 Ga. App. 509, 511 (1) (402 SE2d 108) (1991) ("Trial strategy and tactics do not equate with ineffective assistance of counsel.") (citation and punctuation omitted). This is particularly

true where, as here, the jury acquitted the defendant of several offenses charged in the indictment, which "strongly supports the conclusion that the assistance actually rendered by defendant's trial counsel fell within that broad range of reasonably effective assistance which members of the bar in good standing are presumed to render." (Punctuation and footnote omitted.) *Grier v. State*, 276 Ga. App. 655, 662 (4) (624 SE2d 149) (2005).

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 11, 2006.

*David M. Burns, Jr.*, for appellant.
*Spencer Lawton, Jr., District Attorney, Ronald M. Adams, Assistant District Attorney*, for appellee.