## A10A0503. WARE v. THE STATE.
### (699 SE2d 435)

BARNES, Presiding Judge.

Following the denial of his motion for new trial, Timothy Ware appeals his convictions for theft by taking by a fiduciary, use of false documents within the jurisdiction of state or political subdivision, violation of the Crimes Against the Elderly Act, and two counts of financial transaction card theft. He contends that trial counsel was ineffective, the evidence was insufficient to sustain his conviction for violating the Crimes Against the Elderly Act, and that the trial court provided an inadequate and incomplete answer to a jury question. Following our review we affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citation omitted.) *Wilhelm v. State*, 237 Ga. App. 682 (516 SE2d 545) (1999).

So viewed, the evidence reflects that Ware was the godson of the then eighty-year-old victim, Frank Johnson. Ware's parents and Johnson and his deceased wife were good friends for over 50 years. In the years preceding the alleged crimes Johnson rarely had much contact with Ware other than occasional overnight stays when Ware

YALE LAW LIBRARY

230

traveled to Augusta for medical treatment.

In 2005, Johnson had a stroke while Ware was staying with him, and Ware took him to the hospital for emergency treatment. Ware continued staying with Johnson during his illness, and afterward when Johnson fell after returning home and was hospitalized in February and March of 2005. Johnson testified that he was confused and disoriented during much of the time and that Ware often visited him in the hospital with "documents" requiring his signature, including a power of attorney.

In March 2005, Johnson was moved to a rehabilitation facility for further treatment. Approximately two weeks later a close friend of his came from Virginia to help him move to a rehabilitation facility in Virginia near her home. Ware picked her and Johnson up and drove them to a UPS store. Ware came out of the store with "a large stack of papers," and a UPS worker accompanied him to notarize what Johnson was told was a purchase agreement to buy his home. His friend assumed the document was a purchase agreement as well, and witnessed the document, which in reality was a quitclaim deed giving Ware the home. Johnson testified that he never intended to give the home to Ware, but that Ware offered to purchase it for $275,000 in three yearly installments.

Two days later, as Johnson was preparing to leave for Virginia, he signed additional "documents" as directed by Ware that he later found out were a living trust encompassing all of Johnson's property and making Ware the trustee during Johnson's life and thereafter as successor trustee with the power to "hold, administer, and distribute all property, a durable financial power of attorney naming Ware his agent and conservator, and a living will authorizing Ware to make health care decisions on Johnson's behalf. Johnson testified that it was never his intent to give Ware any of the powers granted in the documents.

While he was in Virginia, Johnson on more than one occasion asked Ware to provide him with the sales contract for the purchase of the house, but Ware refused and continued living in the house even though Johnson told him to "move and get, get out of [his] house." Approximately nine months later, Johnson moved out of the assisted living facility in Virginia and moved into a condominium, where he was able to live independently. During this time, he received a letter from one of his life insurance companies requesting that he verify his request to change his beneficiary designation. Aware that he had not made the request, and with the assistance of his friend, he began to investigate his financial affairs and discovered that Ware had opened four credit cards in Johnson's name and received $6,000 in cash advances from the cards. He also learned that Ware had put all of Johnson's money in a trust account, and had sold

Johnson's house and kept the proceeds. Johnson called the police, who upon completing their investigation, arrested Ware.

1. Ware first contends that trial counsel was ineffective for failing to object to the testimony of two credit card company representatives regarding who was responsible for the card charges, and for failing to object as hearsay to the contents of a letter from an insurance company. To prevail on his claim of ineffective assistance of counsel, Ware must show both that trial counsel's performance was deficient and that, but for that deficient performance, there is a reasonable probability that the result of his trial would have been different. *Wilson v. State,* 286 Ga. 141, 143 (3) (686 SE2d 104) (2009). A failure to make either of these showings precludes a finding that counsel was ineffective. *Braithwaite v. State,* 275 Ga. 884, 885 (2) (b) (572 SE2d 612) (2002). There is a strong presumption that counsel was effective, and we will uphold the trial court's determination that trial counsel was effective unless that determination was clearly erroneous. *Kania v. State,* 280 Ga. App. 356, 360 (5) (634 SE2d 146) (2006).

(a) Ware argues that his trial counsel rendered ineffective assistance by failing to object to conclusory testimony from two credit card company investigators. Ware complains that trial counsel should have objected when the investigators at Citibank and Chase Bank testified that each company had determined that Johnson was not responsible for the charges on the cards. He argues that the testimony implicated him by default as the party responsible for the charges.

At the motion for new trial hearing, trial counsel testified that the investigators

> were not being asked whether or not there was any sort of finding as to whether [Ware] had committed any sort of criminal act or not, so I would not have considered it to be a significant matter. And it is my policy not to object to matters that I do not believe are to the significant detriment of my client.

Ware's defense was essentially justification based on Johnson's supposed dementia. He claimed that his actions regarding Johnson's finances were predicated on either direction from Johnson or justification. Ware testified that he opened the charge cards at Johnson's direction, and that the cash advances were deposited in Johnson's bank account. The investigators' testimony only related to Johnson's responsibility regarding the cards, and did not invade the province of the jury as to whether Ware was justified in his actions regarding the cards.

Thus, the trial court did not err in concluding that trial counsel's decision to forgo objecting to this evidence is a legitimate trial strategy that falls within the range of reasonable professional conduct. See *Smith v. State*, 275 Ga. 326, 328 (3) (565 SE2d 453) (2002).

(b) Ware also maintains that trial counsel was ineffective in failing to object on hearsay grounds to the admission of the contents of a letter from an insurance company. The letter, which was addressed to Johnson, appeared to be in response to Johnson's request to change his beneficiary designation. Johnson had testified that he never made a request for the change, and that it was the receipt of the letter that caused him to investigate Ware's actions. The letter was later admitted without objection.

At the hearing on the motion for a new trial, trial counsel testified that he did not believe an objection was warranted regarding the admission of the letter. During trial, he successfully objected on hearsay grounds to testimony by Johnson's friend regarding what the insurance company said about the letter during a telephone conversation with Johnson, and the contents of the letter on hearsay grounds.

If the conduct and motives of the actor are relevant to the issues on trial, then information, conversations, letters and replies, and similar evidence known to the actor are admissible to explain the actor's conduct. See *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982) (the Supreme Court of Georgia stated a rule for applying OCGA § 24-3-2). The testimony regarding the letter was admissible to explain why Johnson became suspicious of Ware's activities, which then led him to discover the other crimes for which Ware was on trial. Thus, the letter was relevant to explain Johnson's motives for his actions, since his motivation was at issue in the trial because Ware claimed that his actions were directed by Johnson.

An objection aimed at excluding the letter from evidence would have been unavailing, and thus, Ware cannot establish the deficiency prong of the *Strickland* test.

2. Ware also maintains that the evidence was insufficient to prove he violated the Crimes Against the Elderly Act under OCGA § 30-5-8 (a) (1), because the evidence reflected that Johnson was not an "elder person" as defined by OCGA § 30-5-3 (7.1). We do not agree.

Count 4 alleged that on March 10, 2005, Ware "did unlawfully exploit [Johnson], an elder person, by illegally and improperly using [Johnson's] resources, to wit: real property . . . in violation of OCGA § 30-5-8 (a) (1)," which provides that "[i]n addition to any other provision of law, the abuse, neglect, or exploitation of any disabled adult or elder person shall be unlawful." "Elder person"

pursuant to OCGA § 30-5-3 (7.1) "means a person 65 years of age or older who is not a resident of a long-term care facility." For purposes of that statute, "disabled adult" includes a resident of a long-term care facility. OCGA § 30-5-8 (a) (2) (A).

Ware argues that Johnson was not an "elder person" as charged in the indictment, but presumably a "disabled adult," because at the time alleged in the indictment, Johnson was at Wesley Woods, a long-term care facility. The evidence shows that after he was discharged from Emory Hospital, Johnson was transferred temporarily to Wesley Woods Geriatric Hospital in February 2005, and on March 2, 2005, to Emory's Budd Terrace Nursing Facility for continued care. The geriatric physician in charge of Johnson's care testified that Johnson was transferred to the nursing facility for observation and continued care to determine if he "would recover to [his] prior baseline. . . ." He testified that the stay could have lasted one week, two weeks or up to "the full hundred days" covered by Medicare. Johnson was discharged from the facility and moved to Virginia on March 14, 2005. Under these circumstances, Johnson was not a *resident* of a long-term care facility, but was an "elder person," and thus the evidence was sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) to find Ware guilty of exploitation of an elder person.

3. Ware last contends that the trial court erroneously answered a question submitted by the jury regarding revocation of a power of attorney. The record reflects that during its deliberation, the jury submitted the following question: "What is the law regarding revocation of power of attorney? Does the receipt of that document immediately go into effect the minute he signed for it?" After a lengthy discussion, Ware's attorney commented that he did not believe in a criminal case that the trial court could answer the question. The State agreed, and apparently all of the parties contributed to the trial court's written response that, "generally the power of attorney is revocable at the will of the grantor. You must refer to the power of attorney (State's Exhibit 2) to determine the terms of the revocation." Ware then objected "for the record," although the trial court complied with his request to not tell the jury when the revocation came into effect.

OCGA § 17-8-58 (b) precludes appellate review of challenges to the jury charge where the defendant has failed to object in accordance with subsection (a) of that statute, which requires a criminal defendant to inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. *Metz v. State*, 284 Ga. 614, 619-620 (5) (669 SE2d 121) (2008).

Accordingly, Ware has waived any claims of error related to the trial court's response to the jury's questions.

*Judgment affirmed. Bernes, J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED JULY 14, 2010.

*Gerard B. Kleinrock*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.