**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 5, 2019**

# In the Court of Appeals of Georgia

A18A1687. PRUITT v. THE STATE.

REESE, Judge.

A jury found Kimberly McAfee Pruitt ("the Appellant") guilty of five counts of theft by deception.[1] Specifically, the Appellant received convictions for three counts of theft by deception against B. D., and two counts of theft by deception against S. L.. The trial court sentenced the Appellant to serve twenty years, first seven years in confinement and the remaining years on probation. She appeals from the denial of her motion for new trial, arguing that the evidence was insufficient to support her convictions and that the trial court improperly excluded testimony and limited cross-examination of witnesses by defense counsel. For the reasons set forth infra, we affirm.

---

[1] See OCGA § 16-8-3 (a), (b) (1).

Viewed in the light most favorable to the jury's verdict,[2] the evidence shows that, in 2011 to 2012, the Appellant owned a business, McAfee & Associates, and worked as an "independent paralegal[ ]" for several attorneys, including Tony Axam.[3] She often served as a "point of contact" between the attorneys and their clients and, as part of her duties, she accepted payments from the clients toward their legal fees. During the relevant time period, the Appellant allegedly obtained funds from two clients, B. D. and S. L., by falsely telling them that the funds were required for their legal representation or other expenses.

(a) *The Appellant's interactions with B. D.*

Specifically, in August 2011, the Appellant met a 71-year-old woman, B. D., who was seeking an attorney to defend her son, C. D., who had been charged with, inter alia, possession of child pornography. The Appellant recommended Tony Axam, one of the attorneys for whom she was working.

---

[2] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); see also *Harris v. State*, 324 Ga. App. 411 (750 SE2d 7210 (2013).

[3] Mr. Axam subsequently surrendered his license to practice law in Georgia, which is tantamount to disbarment. See *In the Matter of Axam*, 297 Ga. 786 (778 SE2d 222) (2015).

In September 2011, B. D. signed a fee agreement for her son's legal representation with Axam for $100,000, plus $25,000 for a computer forensic expert. After signing the fee agreement, B. D. wrote two checks to "McAfee & Associates[,]" one for $10,000 in September 2011 and the other for $15,000 in October 2011. B. D. gave the checks to the Appellant for the "forensic person." B. D. testified that she thought that McAfee & Associates was the "forensic person[,]" and that she did not realize that the Appellant's name was listed on one of the invoices for McAfee & Associates or that the Appellant's e-mail address was "KimMcAfeePruitt@live.com" until trial.

In September 2012, C. D. pled guilty to the child pornography charges. B. D. testified that, in September 2012, prior to her son entering a guilty plea, she wrote a check for $5,000 to the Appellant because the Appellant told her that Axam "needed [$5,000] more to work with the witnesses and interview and things like that," and B. D. believed her.

After learning of her son's guilty plea, B. D. contacted Axam because she was "shocked" and unhappy that he charged her an additional $5,000 for her son's defense. B. D. met with Axam who told her that he did not charge her another $5,000. After the meeting, she sent Axam a copy of the $5,000 check, but she did not receive

3

a response from him. B. D. subsequently contacted the Forsyth County Sheriff's Department to "report a crime[,]" and eventually spoke to a detective in the white collar unit.

According to Tammy Loehrs, an owner of a computer forensic company located in Arizona, she worked on C. D.'s child pornography case on behalf of Axam's law firm, with the Appellant as her point of contact. Loehrs testified that, for the past 16 years, her usual retainer fee, in child pornography cases, was $7,500, which was the amount she charged in C. D.'s case. Loehrs received a $7,500 payment, plus $1,000 for additional work on the C. D. matter from the Appellant. Loehrs was not asked to prepare a report of her findings in C. D.'s case.

(b) *The Appellant's interactions with S. L.*

In 2010, the Appellant began working for attorney Romin Alavi.[4] At the time, Alavi defended E. L., the husband of S. L., on a possession of child pornography charge. According to S. L., the Appellant worked as a "legal aide" for Alavi and served as the couple's point of contact for Alavi's firm. After E. L.'s 2012 trial, S. L. maintained contact with the Appellant. S. L. testified that the Appellant recommended

_____

[4] Mr. Alavi subsequently surrendered his license to practice law in Georgia, which is tantamount to disbarment. See *In the Matter of Alavi*, 291 Ga. 663 (732 SE2d 86) (2012).

Axam to handle E. L.'s appeal. The couple signed a contract with Axam, wrote a check for the $35,000 retainer fee, and gave it to the Appellant who was serving as Axam's "contact" for E. L.'s appeal. S. L. testified that after paying the retainer fee, the Appellant told her "there was some research that [the Appellant] needed to do, . . . that a new law had come out that might help [E. L.,] and that [Axam] wanted her to break it down. [The Appellant] said that it would take about 60 hours of work, and after that was done, it might help [E. L.'s] case." S. L. paid the Appellant for the work in two installments. She wrote a check to the Appellant for $1,000 in August 2012 so the Appellant would "look into it[.]" In September 2011, S. L. wrote the Appellant a second check for $2,000 because the Appellant told her that the research "looked really promising[.]" S. L. testified that she asked the Appellant more than once for a report of the Appellant's legal research, but she never received it. A detective from the Forsyth County Sheriff's Department contacted S. L. and interviewed her regarding the $1,000 and $2,000 checks for legal research that she wrote to the Appellant.

Axam testified on behalf of the State and denied requesting extra money from B. D. to represent C. D. He testified that, if additional funds were needed by him in a case, he "call[ed his client or the family member] directly and [amended] the

5

contract." When questioned about expert witnesses, he testified that if he needed one, he charged the client extra. He understood that, in C. D.'s case, the forensic expert from Arizona cost $25,000 because he thought that the Appellant told him that fee and "according to the contract, [the $25,000 fee was] to go to the forensic specialist, not to [him]." Axam further testified that he did not think he authorized the Appellant to bill 60 hours of legal research to E. L.'s case and was not aware of a "new law" that might have helped E. L.'s appeal.

The Appellant testified at trial that she owned the business, McAfee & Associates. She averred that she worked as an "independent paralegal" for several attorneys. For C. D.'s case, the Appellant was paid a flat fee by Axam. She testified that, during her initial meeting with B. D., B. D. "knew [the Appellant] was McAfee & Associates, [and] that [the Appellant] actually subcontracted out, because [the Appellant] told [B. D.] that [the Appellant] worked for a few attorneys." She denied telling B. D. that the $25,000 fee was just for the forensic expert Loehrs, testifying that she told B. D. the "exam" of the computer would cost $7,500 and it would cost "$2,000 to $2,500 more" if Loehrs wrote a report. When questioned about the extra $5,000 she requested from B.D., the Appellant testified that a month before trial, "there was a large balance that was owed, . . . [because the Appellant] had done a lot

6

of extra work[.]" She testified that, if she had billed by the hour on C. D.'s case, she would have charged B. D. another $8,000.

With regard to S. L., the Appellant testified that she asked for $1,000 "[t]o start doing research[ ]" on sex offender registry laws. She further testified that she performed 12 to 13 hours of computer legal research on the matter. During cross-examination, the Appellant admitted that she deposited checks from S. L. for $1,000 and $2,000 into her personal account.

Following her convictions, the Appellant filed a motion for new trial. After a hearing, the trial court denied the Appellant's motion. This appeal followed.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*[5]. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.[6]

---

[5] 443 U. S. at 319 (III) (B).

[6] *Jackson v. State*, 281 Ga. App. 506, 507 (636 SE2d 694) (2006) (citation and punctuation omitted).

With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. The Appellant argues that the evidence was insufficient to support her convictions on the of five counts of theft by deception. We disagree.

Under OCGA § 16-8-3 (a), "[a] person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." Further, under OCGA § 16-8-3 (b) (1), "[a] person deceives if he intentionally [c]reates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false[.]"[7]

The State charged the Appellant with three counts of committing theft by deception for obtaining checks from B. D. in the amounts of $10,000 (Count 1), $15,000 (Count 2), and $5,000 (Count 3).[8] Regarding Counts 1 and 2, the evidence

---

[7] (Punctuation omitted.)

[8] Because B. D. was over 65 years old at the time of the crimes, the State indicted the Appellant under OCGA § 16-8-12 (b), which provided that "any person who commits the offense of theft by deception when the property which was the subject of the theft exceeded $500.00 in value and the offense was committed against a person who is 65 years of age or older shall, upon conviction thereof, be punished by imprisonment for not less than five nor more than ten years."

8

showed that B. D. wrote two checks totaling $25,000 to the Appellant's company based on the Appellant's false statement that the computer forensic expert charged $25,000 for her services, when the expert actually charged only $8,500. The jury was authorized to find beyond a reasonable doubt that the Appellant knowingly made false statements regarding the expert's charges in order to keep at least $500 out of each check from B. D. Thus, the evidence was sufficient to support the Appellant's convictions on Counts 1 and 2.[9]

In addition, B. D. paid the Appellant $5,000 when the Appellant told her that Axam needed the additional funds for C. D.'s representation. Given Axam's testimony that he never asked B. D. for the additional funds, nor did he ask the Appellant to do so, the jury was authorized to find beyond a reasonable doubt that the Appellant knowingly made a false statement in order to obtain the $5,000 check from B. D. Thus, the evidence was sufficient to support the Appellant's conviction on Count 3.[10]

---

[9] See *Jackson*, 281 Ga. App. at 507.

[10] See *Jackson*, 281 Ga. App. at 507.

As for the two counts of theft by deception involving S. L., based upon S. L.'s payments of $1,000 (Count 4) and $2,000 (Count 5) to the Appellant,[11] the evidence showed that S. L. made the payments based on the Appellant's statement that the money was needed to compensate her for 60 hours of additional legal research on a "new law" that might help E. L.'s appeal. According to Axam, however, he did not remember authorizing the Appellant to perform the additional research for his client, nor was he aware of any purported "new law" that the Appellant allegedly researched. Further, the Appellant admitted at trial that she only performed 12 to 13 hours of additional research. Consequently, the evidence was sufficient to support the Appellant's convictions on Counts 4 and 5.[12]

In light of the above, we agree that a rational trier of fact could have found the Appellant guilty beyond a reasonable doubt of theft by deception as to B. D. and S. L.

---

[11] The State charged the Appellant with misdemeanors in Counts 4 and 5, given that the amount taken from each of S. L.'s checks did not exceed $1,500. See OCGA § 16-8-12 (a).

[12] See *Jackson*, 281 Ga. App. at 507.

as charged in the indictment.[13] Therefore, it was not error for the trial court to deny the Appellant's motion for new trial as to these convictions.

2. The Appellant argues that the trial court erred in limiting the cross-examinations of B. D. and S. L. Specifically, the Appellant contends that the trial court erred in excluding the e-mails and correspondence between B. D. and the Appellant, and excluding the text messages between S. L. and the Appellant.

> Although the Sixth Amendment right to confrontation secures the right of cross-examination,[[14]] the right of cross-examination is not an absolute right that mandates unlimited questioning by the defense. To the contrary, trial courts retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things[,] interrogation that is only marginally relevant. The permissible scope of cross-examination is committed to the sound discretion of the trial court, and [Georgia's appellate courts] review a limitation of the scope of cross-examination only for abuse of discretion.[15]

---

[13] See *Jackson*, 281 Ga. App. at 507; see also *Allen v. State*, 288 Ga. 263, 264 (1) (702 SE2d 869) (2010) ("It is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient.") (citation and punctuation omitted).

[14] See U. S. Const. amend. VI; *Davis v. Alaska*, 415 U. S. 308, 315 (2) (94 SCt 1105, 39 LE2d 347) (1974).

[15] *Nicely v. State*, 291 Ga. 788, 796 (4) (733 SE2d 715) (2012) (citations and punctuation omitted).

The Supreme Court of Georgia recently held that the right of cross-examination includes a right to inquire into the partiality and bias of witnesses.[16] The right to inquire into partiality and bias, however, is not without limits. [T]he accused is entitled to a *reasonable* cross-examination on the relevant issue of whether a witness entertained any belief of personal benefit from testifying favorably for the prosecution.[17]

In analyzing whether a defendant suffered harm from limitations placed on the cross-examination of a witness,

we examine factors such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, the overall strength of the prosecution's case.[18]

---

[16] *Davis*, 415 U. S. at 316-317 (2) ("[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.") (citation and footnote omitted).

[17] *Lucas v. State*, 303 Ga. 134, 137 (2) (810 SE2d 491) (2018) (citations, punctuation, and footnote omitted; emphasis in original). See OCGA § 24-6-622 ("The state of a witness's feelings towards the parties and the witness's relationship to the parties may always be proved for the consideration of the jury.").

[18] *Knox v. State*, 290 Ga. App. 49, 54 (2) (658 SE2d 819) (2008) (citation and punctuation omitted).

(a) *The cross-examination of B. D.*

The Appellant asserts that the trial court improperly limited the cross-examination of B. D. We disagree.

Prior to trial, the State moved to exclude the specific facts of C. D.'s case from the Appellant's trial. Defense counsel objected on the grounds that he wanted to use the information to "attack [B. D.'s] credibility[ ]" to show that B. D. was upset that C. D. pled guilty "at the last minute[.]" The trial court reserved ruling on the matter and instructed defense counsel "not to bring it up until [defense counsel came] to the sidebar and [told the trial court he was] ready to bring it up." It is undisputed that the Appellant did not tender any of the e-mails between B. D. and the Appellant at trial.[19]

The record shows that, during the cross-examination of B. D., defense counsel approached the bench and in a sidebar colloquy with the State present stated, in part,

> I've got all kinds of emails from [B. D.] blaming other people for taking [child pornography] pictures [in C. D.'s case]. And it goes to her credibility, and it goes to her state of mind, and it goes to her persona where she blames other people for things her son did . . . . If I can't really cross-examine her, I can't show the jury that she's nuts and that she's just mad because she paid all this money[.]

---

[19] At the motion for new trial hearing, the Appellant tendered numerous e-mails between B. D. and the Appellant.

13

The State objected on relevance grounds, citing OCGA § 24-6-608 (b).[20] The trial court sustained the objection, ruling in favor of the State.

Pretermitting whether the trial court improperly excluded the evidence at issue, B. D.'s potential motives, biases, and credibility were presented to the jury.[21] B. D. testified that she thought that McAfee & Associates was the forensic expert in her son's case and wrote the two checks totaling $25,000 for that expert. She also testified that the Appellant "badgered" her for money on more than one occasion to pay for the forensic expert. Further, B. D. testified that she wrote the Appellant the check for $5,000 after the Appellant told her that more money was needed for witnesses in C. D.'s case. Further, B. D. testified that she was "shocked" with the

---

[20] OCGA § 24-6-608 (b) states:
>    Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than a conviction of a crime as provided in Code Section 24-6-609, or conduct indicative of the witness's bias toward a party may not be proved by extrinsic evidence. Such instances may however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness: [c]oncerning the witness's character for truthfulness or untruthfulness; or [c]oncerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

[21] See *Smith v. State*, 253 Ga. App. 55, 56 (2) (557 SE2d 496) (2001) (Exclusion of evidence affirmed because it was cumulative and highly likely the omission of the evidence "did not affect the verdict.") (footnote omitted).

14

outcome of her son's case and told Axam of her displeasure. She also testified that after meeting with Axam, she contacted law enforcement and "told them [she] wanted to report a crime[.]" Also, B. D. testified that she did not realize that the Appellant's name was listed one of the invoices for McAfee & Associates or that the Appellant's e-mail address was "KimMcAfeePruitt@live.com[.]" Further, during B. D.'s cross-examination, defense counsel questioned B. D. about e-mails she sent to the Appellant and other payments made by B. D. to the Appellant for legal work other than C. D.'s defense.

Based on the foregoing, the Appellant has not shown that the limitation on her cross-examination of B. D. prevented her from exploring B. D.'s credibility, and showing her potential motives, and biases.[22] Further, "the extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court, so long as the court does not cut off all inquiry on a subject on which the defense is entitled to reasonable cross-examination."[23] Here the Appellant was not

---

[22] See *Adams v. State*, 344 Ga. App. 159, 164-165 (2) (809 SE2d 87) (2017) (Pretermitting whether the trial court should have permitted defense counsel to present certain testimony, "an appellant must show harm as well as error in the exclusion of evidence.") (citation omitted).

[23] *Baker v. State*, 293 Ga. 811, 814 (2) (750 SE2d 137) (2013) (citation and punctuation omitted).

precluded from relevant inquiry into B. D.'s, credibility, potential motives, and biases.[24]

(b) *The cross-examination of S. L.*

The Appellant asserts that the trial court improperly limited the cross-examination of S. L. We disagree.

During the cross-examination of S. L., the State objected on relevance grounds to questions regarding conversations between S. L. and the Appellant on E. L.'s bail and probation restrictions. A sidebar between the parties and the trial court ensued where defense counsel stated:

> Again, this goes to credibility. . . . But we have all these texts, and they don't involve her kids, and they don't involve . . . what I have read much about my client. They are about this thing with drinking and a relationship with [Alavi], I understand [the State is] going to object and say it's irrelevant. The fact that she is leading this thing out, oh, they just had a few conversations about kids. Again, it goes to credibility.

The trial court sustained the State's objection.

---

[24] See generally *Inman v. State*, 281 Ga. 67, 73 (5) (635 SE2d 125) (2006) (noting that "[i]n order to have reversible error, there must be harm as well as error") (citation and punctuation omitted); see also *Adams v. State*, 344 Ga. App. at 164-165 (2).

Pretermitting whether the trial court improperly excluded the evidence at issue, S. L.'s potential motives, biases, and lack of credibility were presented to the jury.[25] The record shows that S. L. admitted during cross-examination that there were "probably" over 900 texts between the Appellant and her over months and that they had remained friendly after the Appellant's work with E. L. was completed.[26] Also on cross-examination, S. L. testified that her relationship with the Appellant "seemed like a friendship[,]" and S. L. could not recall if she initiated contact with law enforcement. Axam testified that he did not think that he authorized additional legal research in E. L's case, nor was he aware of a new law that would have assisted E. L.'s appeal.

Based on the above, the Appellant was not substantially or prejudicially precluded from relevant inquiry as to S. L.'s credibility, potential motives, and biases.[27] Thus, this argument fails.

---

[25] See *Adams v. State*, 344 Ga. App. 159, 164-165 (2).

[26] At the motion for new trial hearing, the Appellant tendered several hundred text messages between S. L. and the Appellant.

[27] See *Young v. State*, 232 Ga. 285, 288 (206 SE2d 439) (1974) (finding that, because the appellant failed to show how the testimony at issue was relevant or what that testimony would have been, appellant failed to show how his defense was prejudiced when the trial court precluded a question on cross-examination).

3. The Appellant argues that the trial court erred in limiting the testimony of Jesse McCurry, who introduced B. D. to the Appellant, as to what McCurry heard the Appellant tell B. D. during their initial meeting. We disagree.

"A party's own admission, offered by an opponent, is not hearsay and is always admissible.[28] However, a self-serving declaration, such as a statement of one's innocence, remains inadmissible hearsay unless the declarant testifies and is subject to cross-examination."[29]

B. D. learned of the Appellant through Jesse McCurry, a friend of her son's girlfriend. The Appellant called McCurry to testify about the Appellant's initial meeting with B. D. The State objected to the testimony as hearsay, under OCGA § 24-8-801 (d) (2) (C).[30] The trial court sustained the State's objection. After a recess, the

---

[28] See OCGA § 24-8-801 (d) (2) (A) ("'Hearsay' shall be subject to the following exclusions and conditions: Admissions shall not be excluded by the hearsay rule. An admission is a statement offered against a party which is [t]he party's own statement, in either an individual or representative capacity[.]").

[29] *Morales v. State*, 337 Ga. App. 614, 618 (3) (a) (788 SE2d 535) (2016) (citations, punctuation, and footnote omitted).

[30] See OCGA § 24-8-801 (d) (2) (C) ("'Hearsay'" shall be subject to the following exclusions and conditions: Admissions shall not be excluded by the hearsay rule. An admission is a statement offered against a party which is [a] statement by a person authorized by the party to make a statement concerning the subject[.]") (punctuation omitted).

trial resumed with the Appellant testifying. The Appellant testified that during their initial meeting, B. D. "knew that [the Appellant] was McAfee & Associates[.]" The Appellant then called McCurry to continue testifying. McCurry testified that the initial meeting between B. D. and the Appellant lasted approximately four hours and, at the request of B. D., McCurry delivered journals from C. D.'s residence to the Appellant.

At the motion for new trial hearing, McCurry testified that, during the initial meeting between B. D. and the Appellant, the Appellant told B. D. that McAfee & Associates was her "business title, [the] name that she had, the business that she had started, and she was a paralegal." Even if the trial court erred in excluding McCurry's testimony, there is no harm, given the overwhelming evidence against the Appellant. Thus, we find that the trial court did not abuse its discretion in excluding McCurry's testimony that was objected to by the State.[31]

*Judgment affirmed. Barnes, P. J., and McMillian, J., concur.*

---

[31] See *Rogers v. State*, 285 Ga. App. 568, 570 (2) (646 SE2d 751) (2007) ("As a general rule, admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse.") (citation and punctuation omitted).